**MONTGOMERY WARD AND COMPANY, Plaintiff,**

v.

**ROY STONE TRANSFER CORPORATION, Collinsville, Virginia, Defendant.**

**Civ. A. No. 1261.**

United States District Court
W. D. Virginia,
at Roanoke.

July 26, 1963.

John Douglas Clark, Washington, D. C., and Dalton, Poff & Turk, Radford, Va., for plaintiff.

Spencer T. Money, Washington, D. C., and M. Harrison Joyce, Martinsville, Va., for defendant.

MICHIE, District Judge.

This case involves the construction of the appropriate rate for shipments of furniture from Pulaski and Bassett, Virginia, to points in the south. It involves the construction of Note 3 of Item 13220 of Motor Carriers Traffic Association Tariff 503–F, MF–I.C.C. No. 552. Motor Carriers Traffic Association is the agent of the defendant Roy Stone Transfer Corporation, hereinafter called "Roy Stone". Montgomery Ward has brought suit against Roy Stone for $203.11, plus interest, but as the solution of the question will involve future shipments, and possibly the extent of future shipments, considerably more than the mere sum claimed is doubtless involved.

Note 3 above referred to reads, insofar as material, as follows:

"Note 3—applicable only as follows: via: * * * Roy Stone Transfer Corporation, on traffic handled direct and in connection with R. P. Thomas Trucking Company on joint-line traffic when moving from points in S. C."

It is the plaintiff's contention that the final qualifying phrase "when moving from points in S. C." applies only to such traffic moved "in conjunction with R. P. Thomas Trucking Company on joint-line traffic" and does not apply on traffic handled direct. The defendant contends that the note applies not only to traffic moving from points in South Carolina in connection with R. P. Thomas Trucking Company on joint-line traffic but also to traffic handled direct by Roy Stone Transfer Corporation without any transfer to R. P. Thomas Trucking Company.

Before we get to the merits of the question, we are met by the contention of the defendant that the plaintiff, prior to the institution of this suit, should have filed a complaint with the Interstate Commerce Commission for the purpose of having the Commission determine the applicable and lawful rates that apply to the shipments. In this respect the defendant relies upon United States v. Western Pacific Railroad Company, 352

U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). I do not believe that that case supports that contention of the defendant.

The Western Pacific case reaffirmed the doctrine of Great Northern Railway v. Merchants' Elevator Company, 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943 (1922), which has been repeatedly followed and which determined what type of case must be referred to the Interstate Commerce Commission before a suit may be brought upon the question. In that case it is said at pp. 293, 294 of 259 U.S., pp. 479, 480 of 42 S.Ct.:

> "It may happen that there is a dispute concerning the meaning of a tariff which does not involve, properly speaking, any question of construction. The dispute may be merely whether words in the tariff were used in their ordinary meaning, or in a peculiar meaning. This was the situation in the American Tie & Timber Co. Case, supra [Texas & Pac. Ry. Co. v. American Tie & Timber Co., 234 U.S. 138, 34 S.Ct. 885, 58 L.Ed. 1255]. The legal issue was whether the carrier did or did not have in effect a rate covering oak ties. The only matter really in issue was whether the word 'lumber' which was in the tariff, had been used in a peculiar sense. The trial judge, charged the jury: 'If you believe from the evidence that oak railway cross ties are lumber within the meaning and usage of the lumber and railroad business, then you are charged the defendant had in effect a rate applying on the ties offered for shipment.' This question was obviously not one of construction; and there is not to be found in the opinion of this court, or in the proceedings in either of the lower courts, a suggestion that the case involved any disputed question of construction. The only real question in the case was one of fact; and upon this question of fact 'the views of men engaged in the lumber and railroad business as developed in the testimony' were in 'irreconcilable conflict,' [234 U.S.] p. 146 [34 S.Ct. p. 888]. As that question, unlike one of construction, could not be settled ultimately by this court, preliminary resort to the Commission was necessary to ensure uniformity. * * *

> "In the case at bar the situation is entirely different from that presented in the American Tie & Timber Co. Case, or in the Loomis Case [Loomis v. Lehigh Valley R. R. Co., 240 U.S. 43, 36 S.Ct. 228, 60 L.Ed. 517]. Here no fact, evidential or ultimate, is in controversy; and there is no occasion for the exercise of administrative discretion. The task to be performed is to determine the meaning of words of the tariff which were used in their ordinary sense and to apply that meaning to the undisputed facts. That operation was solely one of construction; and preliminary resort to the Commission was, therefore, unnecessary."

In United States v. Western Pacific R. Co., supra, the court referred to the foregoing doctrine and explained it in the following language at pp. 65, 66 of 352 U.S., p. 166 of 77 S.Ct.:

> " * * * A particularization of such circumstances emerged in Great Northern R. Co. v. Merchants Elevator Co., 259 U.S. 285 [42 S.Ct. 477, 66 L.Ed. 943]. There the Court held that where the question is simply one of construction the courts may pass on it as an issue 'solely of law.' But where words in a tariff are used in a peculiar or technical sense, and where extrinsic evidence is necessary to determine their meaning or proper application, so that 'the enquiry is essentially one of fact and of discretion in technical matters,' then the issue of tariff application must first go to the Commission. The reason is plainly set forth: such a 'determination is reached ordinarily upon voluminous and conflicting evidence, for the adequate appreciation of which ac-

quaintance with many intricate facts of transportation is indispensable; and such acquaintance is commonly to be found only in a body of experts.' Id., [259 U.S.] at 291 [42 S. Ct. at p. 479]. We must therefore decide whether a determination of the meaning of the term 'incendiary bomb' in Item 1820 involves factors 'the adequate appreciation of which' presupposes an 'acquaintance with many intricate facts of transportation.' We conclude that it does."

Unlike the Western Pacific case, the case at bar does not seem to me to require a "determination * * * reached ordinarily upon voluminous and conflicting evidence, for the adequate appreciation of which acquaintance with many intricate facts of transportation is indispensable * * *." On the contrary, it involves simply the meaning of the English language as somewhat awkwardly used in Note 3 above quoted.

I believe that the proper construction of the language used is that the note applies:

(1) on all traffic handled direct, regardless of origin; and

(2) on all joint-like traffic handled in connection with R. P. Thomas Trucking Company when moving from points in South Carolina.

It seems to me that to arrive at the construction contended for by the defendant the phrase should have read "Roy Stone Transfer Corporation, on traffic moving from points in South Carolina, whether handled direct or on joint-line in connection with R. P. Thomas Trucking Company."

[3] Plaintiff also claims that its attorney should be paid a reasonable attorney's fee for bringing this action. No authority for such allowance is cited in the complaint and in the brief reliance is placed upon "49 U.S.C.A. 23 Section 16". There is no such section that I can find. Assuming that 49 U.S.C.A. § 16 (2) is referred to, it suffices to say that this provision deals only with a suit brought to enforce payment by a carrier of money which the carrier has been ordered to pay. However, that provision is obviously not applicable to a suit brought to recover overcharges on freight shipments.

Judgment will be entered for the plaintiff in the sum of $203.11, plus interest at the rate of 6%, from the respective dates the overpayments were made.