Paul M. GARRETT, Trustee in Bankruptcy for Metropolitan Shippers' Clearings Corp. of Washington, Appellant,

v.

TIME–D.C., INC., Appellee.

No. 72–3042.

United States Court of Appeals, Ninth Circuit.

Aug. 14, 1974.

**628**

Nicholas F. Corning, Bellevue, Wash., for appellant.

Boyd Hartman (argued), of Hartman & McGuire, Seattle, Wash., for appellee.

## OPINION

Before KILKENNY, TRASK and CHOY, Circuit Judges.

CHOY, Circuit Judge:

This appeal presents the issue whether a claim that a motor carrier must pay pre-judgment interest on shipping charges that exceed Interstate Commerce Act limits is one "arising under an Act of Congress regulating commerce" so as to be within the jurisdiction of a federal district court under 28 U.S.C. § 1337.[1] The district court held it was not. We reverse and remand.

Paul M. Garrett, the trustee for the bankrupt Metropolitan Shippers' Clearings Corporation (MSCC), seeks a declaratory judgment that interest must be paid on shipping overcharges. The overcharges occurred when TIME–DC, a motor carrier, charged its customers, whether inadvertently or not, more than was specified in tariffs filed with the Interstate Commerce Commission (I.C. C.).

MSCC's business consisted of purchasing shipper's rights to collect overcharges, performing audits to determine if the motor carriers had charged more than permitted in the applicable tariffs, and then collecting the overcharges.[2]

Normally, collecting overpayments has occasioned no difficulty. When it has been the subject of repayment demands, TIME–DC, like other carriers obliged to remit overcharges under § 317(b) of the Interstate Commerce Act, 49 U.S.C. § 317(b), has refunded such charges routinely. However, it, as well as other carriers, has refused to pay any interest to compensate the shipper for retention of the monies during the period between the overpayments and the remittance of the excessive charges.

Garrett contends that the Interstate Commerce Act requires payment of interest because uncompensated retention of an overpayment is part and parcel of an overcharge. In support of his contention, he points to certain provisions in Part II of the Act, 49 U.S.C. §§ 301–327, governing interstate motor carriers. Under that Part a carrier is prohibited from collecting "a greater or less or different *compensation* for transportation" than set forth in its tariffs. 49 U.S.C. § 317(b) (emphasis added). A shipper may pursue a judicial action for "overcharges" (or a carrier an action for "undercharges" if less than the tariff has been collected). *See* 49 U.S.C. § 304a. "Overcharges" are defined as charges

---

1. Section 1337 provides:
   The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

2. In an affidavit an MSCC employee averred that there were $1,200 in overcharge claims pending against TIME–DC.

"in excess of those [provided] under the tariffs. . . ." 49 U.S.C. § 304a(6). Garrett argues that the carrier's "overcharge" or "compensation" is increased by the interest benefit inhering in retention of the overpayment until it is refunded. Thus, he concludes, the statute affords him a right to the preremittance interest.

■ The issue before us relates only to the presence of jurisdiction under § 1337. Since $10,000 is admittedly not in controversy, § 1331's parallel jurisdictional grant for cases "arising under the Constitution, treaties, or laws of the United States" is unavailable. Nonetheless, § 1331 does serve as a starting point since the "arising under" language in § 1337 is interpreted in essentially the same way as the "arising under" phrase in § 1331.[3] The test of what arises under an Act of Congress regulating commerce is therefore a familiar two-part one. *See generally* T. B. Harms Co. v. Eliscu, 339 F.2d 823, 826–827 (2d Cir. 1964), cert. denied 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965); ALI, Division of Jurisdiction Between State and Federal Courts 177–79 (1969). It must appear either that the complaint seeks a remedy granted or properly inferable from an act regulative of commerce, *see, e. g.,* American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 36 S.Ct. 585, 60 L.Ed. 987 (1916), or that the suit hinges on the interpretation of such an act of Congress. *See, e. g.,* Gully v. First National Bank, 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936); Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 199, 41 S.Ct. 243, 65 L.Ed. 577 (1921).

■ The cause of action seems to be squarely within the terms of this test. Garrett is claiming that certain provisions of the Interstate Commerce Act establish a duty on the part of motor carriers to pay preremittance interest; the question is whether such a duty can be inferred from the Act. Hence, the claim is one that vitally depends on the construction of a federal statute for its resolution.

Under the rule of Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), we need not definitely decide MSCC's claim. Our task under the rule is only to determine that the statutory issue is neither "frivolous or insubstantial," nor put forth solely to gain federal jurisdiction. *Id.* at 682–683.[4]

The claim here is, we think, substantial. While there has never been a suit solely for preremittance interest under the Interstate Commerce Act—probably because of the usually small amounts involved—courts have uniformly held that there is a right to such interest in cases where both the overcharge (or undercharge) and interest were sought.[5] These courts typically have not discussed the origins of the interest awards, but it is at least arguable that the awards

3. Russo v. Kirby, 453 F.2d 548, 551 n. 7 (2d Cir. 1971); McFaddin Express Co. v. Adley Corp., 346 F.2d 424, 426 (2d Cir. 1965), cert. denied, 382 U.S. 1026, 86 S.Ct. 643, 15 L.Ed.2d 539 (1966); Eickhof Construction Co. v. Great Northern Ry., 291 F.Supp. 44, 46 (D.Minn.1968); 1 J. Moore, Federal Practice § .60 [8.–3] at 626–27 (2d ed. 1959); *see* Carlson v. Coca-Cola Co., 483 F.2d 279, 280 (9th Cir. 1973).

4. *See* Garfinkle v. Wells Fargo Bank, 483 F.2d 1074, 1076–1077 (9th Cir. 1973); Carlson v. Coca-Cola Co., 483 F.2d 279, 280 (9th Cir. 1973).

5. Cases under Part II of the Act so holding are: Fawley Motor Lines, Inc. v. Cavalier Poultry Corp., 235 F.2d 416, 419 (4th Cir. 1956); T. & M. Transportation Co. v. Shat-tuck Chemical Co., 158 F.2d 909, 910–911 (10th Cir. 1947); Montgomery Ward & Co. v. Roy Stone Transfer Co., 220 F.Supp. 137, 140 (W.D.Va.1963), vacated on other grounds, 329 F.2d 172 (4th Cir. 1964). The I.C.C. has never decided this issue since it has no authority to award reparations in motor carrier cases. *See* Smith v. Moland Bros. Trucking Co., 46 M.C.C. 762 (1947).

   It does have such power when rail charges are at issue under Part I of the Act, and both the I.C.C. and courts have long upheld interest awards in such cases. *See, e. g.,* Louisville & Nashville R.R. v. Sloss-Sheffield Steel & Iron Co., 269 U.S. 217, 239–240, 46 S.Ct. 73, 70 L.Ed. 242 (1925); Louisiana & Arkansas Ry. v. Export Drum Co., 359 F.2d 311, 317 (5th Cir. 1966); Rutter & Co. v. Chicago & N.W. Ry., 36 I.C.C. 272, 280 (1915).

were grounded on the policy of the Act limiting a carrier's benefits to precisely those specified in the tariffs. The one court to discuss the issue, the Third Circuit in Southern Pacific Co. v. Miller Abattoir Co., 454 F.2d 357 (1972), premised its holding awarding interest on such a reading of the Act. That was a suit involving a railroad's overcharge in violation of § 6(7) of the Act, a section corresponding to those in Part II limiting the charges carriers may levy. The court found that the "policy expressed" by the Act "require[d] that prejudgment interest be awarded". *Id.* at 362.

> [T]he only lawful charge for shipping the lambs is the full tariff charge. To allow the Railroad to recover without awarding prejudgment interest would be to diminish the tariff charge by an amount representing the value of the use of the money owed for the period prior to the judgment. Such a diminution would be contrary to § 6(7).

*Id.* The words "compensation" and "overcharge" in Part II are certainly susceptible of the same interpretation. Garrett's statutory claim here is not insubstantial.

TIME–DC, however, argues that the right to interest claimed by the plaintiff is not one arising under the Act, but one derived from the common law. Section 1337 uses the term "arising under an Act of Congress"; in contrast, § 1331 grants jurisdiction for causes arising under the "laws" of the United States. The term "laws," it has been held, encompasses federal common law. Illinois v. Milwaukee, 406 U.S. 91, 98–101, 92 S. Ct. 1385, 31 L.Ed.2d 712 (1972). But it is generally thought that "Act of Congress" in § 1337 limits the reach of the statute to cases arising under statutory law. *See* Ivy Broadcasting Co. v. American Telephone & Telegraph Co., 391 F. 2d 486, 489 (2d Cir. 1968); Frenkel v. Western Union Telegraph Co., 327 F. Supp. 954, 958 (D.Md.1971). If it is a federal common law right that appellant is asserting, then, there can be no § 1337 jurisdiction.

■ It is true that the Interstate Commerce Act does not in so many words declare that "pre-remittance interest shall be awarded." Such a principle is, however, at least inferable from the Act, and that is all that is necessary. In Fielding v. Allen, 181 F.2d 163 (2d Cir.), cert. denied 340 U.S. 817, 71 S.Ct. 46, 95 L.Ed. 600 (1950), the plaintiff's claim was that the Interstate Commerce Act inferentially created a private right of action to challenge I.C.C.-approved railroad mergers. The court held this claim arose under the *statute*. Judge Swan, writing for the court, rejected an argument similar to that put forth by TIME–DC here: "Nor need the federal statute upon which the claim is based expressly provide that the plaintiffs shall have a remedy by way of suit." 181 F.2d at 166. It is enough that the statute provide the source of the right or duty claimed in the suit. *See* Murphy v. Colonial Federal Savings & Loan Association, 388 F.2d 609, 611, 615 (2d Cir. 1967).[6] To require more would establish an impossible and artificial line between statute and common law which nowhere in fact exists.

We hold that the claim here arises under the Interstate Commerce Act.[7]

Reversed and remanded.

---

6. In *Murphy* the court held that a suit in which plaintiffs sought a right to inspect federal savings and loan membership lists arose under the Federal Home Loan Act because the right depended on "fleshing out" vague regulations specifying the right of members to vote by proxy.

7. According jurisdiction in this class of cases will not, it should be noted, impose any practical burdens on federal courts, a factor we are admonished to consider by Gully v. First National Bank, 299 U.S. 109, 117–118, 57 S. Ct. 96, 81 L.Ed. 70 (1936). Suits claiming solely pre-remittance interest on freight overcharges will undoubtedly be few. Moreover, the issue is purely a federal one, so that a federal forum is desirable.