BELLE FOURCHE PIPELINE COMPANY, Black Hills Trucking, Inc., Equitable Oil Purchasing Company, Eighty-Eight Oil Company, J. Frank Pottorff, and H.A. True, Jr., Plaintiffs,

v.

The UNITED STATES of America, and The Federal Energy Regulatory Commission, Defendants.

No. C82–0145–B.

United States District Court,
D. Wyoming.

Jan. 20, 1983.

Robert Stanley Lowe and Manuel A. Lojo, Casper, Wyo., and Jack Vickrey, Houston, Tex., for plaintiffs.

Charles A. Moore, Gen. Counsel, Nathan P. Fishkin, Deputy Asst. Gen. Counsel, Marilyn Doria, Asst. Gen. Counsel, Gregory F. Linsin and John L. Katz, Trial Attys., F.E.R.C., Washington, D.C., for defendants.

## MEMORANDUM OPINION

BRIMMER, District Judge.

This case is an effort by the Plaintiffs to halt an administrative investigation by the Federal Energy Regulatory Commission (FERC) of an alleged intrastate business, after several weeks of review of Plaintiffs' files by a team of FERC's lawyers, accountants and clerks who photocopied more than 13,000 documents in the process of which they nearly stopped the Plaintiffs' work. FERC subpoenaed what is asserted to be virtually all of Plaintiffs' records and documents in their possession for the last five years. FERC also subpoenaed, independently, the records of most of the Plaintiffs' customers, which Plaintiffs assert will detrimentally affect their businesses. The Plaintiffs contend that their oil pipeline op-

erations are conducted within the State of Wyoming and are therefore intrastate commerce subject to the regulation of the Wyoming Public Service Commission, and that they are not subject to regulation by FERC under the powers delegated to it by the Department of Energy Organization Act to regulate transportation of oil by pipeline, 42 U.S.C. Section 7172(b).

The Plaintiffs seek a declaratory judgment and ask the Court to use its equitable powers of restraint to halt further investigation. Jurisdiction is now claimed on the ground that a case or controversy exists between the Plaintiffs and FERC over whether or not they are subject to federal regulation under the interstate commerce clause of the Constitution, which controversy comes under the jurisdictional grant of 28 U.S.C. Section 2201 relating to declaratory judgments.

The Plaintiffs are Belle Fourche Pipeline Company (Belle Fourche), which operates a crude oil pipeline as a gathering system that is wholly in Wyoming; Black Hills Trucking, Inc. (BHT), a Wyoming corporation, which operates common carrier tank trucks that transport oil from producing Wyoming wells to receiving points in the Belle Fourche pipeline system in Wyoming; Equitable Oil Purchasing Company (Equitable), a Wyoming corporation, which operates a "gravity bank" in Casper, Wyoming, designed to compensate shippers of Wyoming oil for increases or decreases in the value of their crude oil due to changes in gravity of their oil resulting from commingling of the oil in a common stream; Eighty-Eight Oil Company, a partnership, which purchases and sells crude oil and ships 60% to 70% of the total volume of oil that is transported in Wyoming by Belle Fourche; and two individuals, J. Frank Pottorff and H.A. True, Jr., officials of the Plaintiffs.

The Defendants, the United States and FERC, moved to dismiss the Plaintiffs' Complaint on the grounds that: (1) The Court has no jurisdiction because Plaintiffs' claims are not ripe for review; (2) Judicial review of such agency action is vested in the Court of Appeals; (3) The Plaintiffs have an adequate remedy at law by refusing to obey the FERC subpoenas; and (4) The subpoenas are within the scope of FERC's statutory authority.

The Plaintiffs sought a temporary restraining order to preserve the status quo and moved for a preliminary injunction. At the evidentiary hearing on the preliminary injunction, the Court consolidated the matter for a hearing on the merits, without objection by the parties, under Rule 65(a)(2), F.R.C.P. Thus, this matter has been fully heard on its merits and is ready for final disposition.

The issues raised by the parties in their briefs are:

(1) Whether or not this Court has jurisdiction of this matter?

(2) Whether or not the Plaintiffs' activities are intrastate in character so that FERC has no regulatory jurisdiction?

(3) Whether or not the subpoenas issued by FERC in its "private investigation" are within the scope of its investigating authority?

The threshold question is whether this Court has subject matter jurisdiction in this case. The Plaintiffs initially pled jurisdiction under the Department of Energy Organization Act (DOEOA), 42 U.S.C. Section 7192, under the Administrative Procedure Act, and under the Declaratory Judgment Act. By Order dated August 18, 1982, this Court held that jurisdiction did not exist under the Plaintiffs' alleged jurisdictional statutes. In assessing the potential jurisdiction under the DOEOA, this Court examined the Interstate Commerce Act only insofar as it expressly granted jurisdiction to the Court of Appeals to review final agency action and reached the conclusion that jurisdiction in this Court did not exist under 42 U.S.C. Section 7192(a) or Section 7192(b). That conclusion remains unaltered.

Plaintiffs have now amended their complaint to include substantive jurisdictional bases not contained in their original pleadings. They alleged subject matter jurisdiction based upon 28 U.S.C. Section 1331, which provides in relevant part, that "The district courts shall have original jurisdic-

tion of all civil actions wherein the matter in controversy . . . arises under the Constitution, laws or treaties of the United States," and 28 U.S.C. Section 1337, which provides in relevant part that "The district courts shall have original jurisdiction of any civil action or proceeding arising under Act of Congress regulating commerce. . . ." FERC concedes that the Interstate Commerce Act is an "Act of Congress regulating commerce." In fact, in the FERC staff report handed to the Court at the trial (Court Exhibit I filed concurrently herewith as a sealed document), its staff claims jurisdiction to make a "formal private investigation" under the Interstate Commerce Act.

The test for determining whether a claim "arises under" federal law is the same for both Sections 1331 and 1337. *First National Bank of Aberdeen National Bank,* 627 F.2d 843, 849 n. 14 (8th Cir.1980); *Carlson v. Coca-Cola Co.,* 483 F.2d 279, 280 n. 1 (9th Cir.1973); *McFaddin Express, Inc. v. Adley Corp.,* 346 F.2d 424, 426 (2nd Cir.1965), cert. den. 382 U.S. 1026, 86 S.Ct. 643, 15 L.Ed.2d 539 (1965). That test has been stated by the Tenth Circuit Court of Appeals as follows:

"A case 'arises' under the laws of the United States if it clearly and substantially involves a dispute or controversy respecting the validity, construction or effect of such laws which is determinative of the resulting judgment." *Mountain Fuel Supply Co. v. Johnson,* 586 F.2d 1375, 1381 (10 Cir.1978).

In the instant action, the Plaintiffs contend that the subpoenas issued by FERC, which precipitated the Plaintiffs' action, were not within the scope of the agency's authority or jurisdiction under 49 U.S.C. Sections 12 and 13 (now 49 U.S.C. Sections 11701 and 10321). In order to properly examine the validity of the Plaintiffs' claims, it is imperative that the above federal statutes be construed to determine whether the Commission has the power and authority to conduct the type and breadth of investigation it has undertaken in regard to the Plaintiffs.

Specifically, this Court has been asked to make a determination as to whether the Plaintiffs' businesses are intrastate or inter-

state in character. Such a determination requires a construction, interpretation, and application of Section 1 of the Interstate Commerce Act. This Court has jurisdiction pursuant to 28 U.S.C. Section 1337 because "federal jurisdiction under the Interstate Commerce Act exists [under Section 1337] where the remedy sought is inferable from the Act or hinges on an interpretation of it." *Ashley, Drew, and Northern Railway v. United Transportation Union,* 625 F.2d 1357, 1369 (8th Cir.1980), citing *Garrett v. Times-D.C., Inc.,* 502 F.2d 627, 629 (9th Cir. 1974).

Other courts have found it equally necessary to construe provisions of the Interstate Commerce Act in order to determine the validity of subpoenas issued by the Interstate Commerce Commission. *Servitron Inc. v. ICC,* 380 F.Supp. 1344 (M.D.La.1974), 420 U.S. 999, 95 S.Ct. 1440, 43 L.Ed.2d 758; *Comet Electronics, Inc. vs. U.S.,* 381 F.Supp. 1233 (W.D.Missouri 1974), 420 U.S. 999, 95 S.Ct. 1440, 43 L.Ed.2d 758. Both of those cases involved suits by plaintiffs, who were not under investigation themselves but who did business with the company under investigation, to declare that the Commission did not have authority to subpoena them and that the subpoenas in question were too broad. The court in *NLRB v. British Auto Parts, Inc.,* 266 F.Supp. 368 (C.D.Cal.1967) held that 28 U.S.C. Section 1337 vested the district courts with jurisdiction to determine the validity of administrative subpoenas in order that the courts might "aid administrative agencies in carrying out their congressionally authorized powers and duties, despite the absence of any express grant of district court jurisdiction under the agencies' respective enabling acts". *Id.* at 374. District courts have also found subject matter jurisdiction under Sections 1331 and 1337 in actions which involved challenges to administrative actions in contexts similar to the present case. In *A.O. Smith Corporation v. FTC,* 396 F.Supp. 1108 (D.Del.1975), the agency requested that the Plaintiff file certain business reports. In a pre-enforcement action brought by one of the businesses affected, asserting the lack of statutory authority of the agency to require this data,

and alleging that an undue burden was involved in providing the information requested, the Court found the matter both ripe for judicial review and within the subject matter jurisdiction of both Sections 1331 and 1337, since the Commission's actions were taken under its claimed authority of the Federal Trade Commission Act. See also *Smith v. Federal Trade Commission,* 417 F.Supp. 1068 (D.Del.1976). Defendants herein have taken similar action in issuing subpoenas under the alleged authority of the Interstate Commerce Act, and jurisdiction is therefore proper in this Court.

Clearly, the authorities hold that if the resolution of the Plaintiff's claim requires an interpretation of the Interstate Commerce Act, then the Plaintiff has raised a federal question over which this Court should correctly invoke jurisdiction. *Ashley, Drew, and Northern Railway v. United Transportation Union,* supra. Plaintiffs here have done exactly that, and jurisdiction is vested under both Section 1331 and Section 1337.

■ The district court is a proper forum in which to hear the dispute involved in the instant action. On January 19, 1982, FERC served four subpoenas upon Plaintiffs, requiring the production of what Plaintiffs claim are all of their records and documents in Washington, D.C. FERC's team of lawyers, accountants and clerks were invited to Plaintiffs' offices in Casper, Wyoming, where they photocopied approximately 13,-000 documents and then the Plaintiffs stopped the investigation because it was disrupting their business and they felt that the documents produced had established the intrastate nature of their businesses. The Commission has instituted no formal proceedings to enforce the subpoenas, in which the Plaintiffs could be heard, and consequently there will be no final agency action which could be the subject of appeal to the circuit court. The four subpoenas served on Plaintiffs are only part of the problem, for FERC has also served subpoenas duces tecum on most of Belle Fourche's shippers over the Wyoming system. Mere refusal by Plaintiffs to comply with their subpoenas and a subsequent enforcement action

wouldn't affect the other shippers. It is therefore important, assuming arguendo that Plaintiffs are in fact not in intrastate commerce, that rights asserted by Plaintiffs be adjudicated at this stage of the Commission's investigation, because to oblige Plaintiffs to wait to raise the issue of FERC's right to investigate until after the investigation is complete and the agency undertakes formal, final action does not adequately protect the Plaintiffs. No adequate remedy would be available at that point. They should have some forum in which they can have their day in court. When there is no other adequate administrative or judicial remedy, the district court may exercise jurisdiction to enforce important rights which have been infringed by acts of a federal administrative agency in excess of the agency's authority. *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), *Deering Milliken, Inc. v. Johnston,* 295 F.2d 856 (4th Cir.1961); *Izaak Walton League of America v. Schlesinger,* 337 F.Supp. 287 (D.C.D.C.1971).

■ 28 U.S.C. Sections 2321 and 2342 grant original jurisdiction in the Courts of Appeal only for matters which amount to challenges of final agency action. Cases which arise under the legislative acts recited in these Sections but which have not yet resulted in final agency action in the form of a rule, regulation, or order cannot be reviewed in the Court of Appeals, but may be reviewed in the district court. *Citizens for a Safe Environment v. Atomic Energy Commission,* 489 F.2d 1018 (3rd Cir.1974).

The Third Circuit Court of Appeals in *Union National Bank of Pittsburgh v. I.C.C.,* 569 F.2d 742, 745 (3rd Cir.1977) also recognized the ability of a district court to exercise jurisdiction over disputes about agency practices which have not resulted in "final agency action" necessary for review in the courts of appeal.

"The court of appeals has exclusive jurisdiction to review only 'rules, regulations or final orders of the Interstate Commerce Commission' 28 U.S.C. 2342(5). If an order or other agency action is not final—and if it is not a rule or regula-

tion—it is not reviewable in the courts of appeals in the first instance. (Citation omitted.) It may of course be reviewable in the district courts pursuant to other jurisdictional statutes" (citing 28 U.S.C. 1337).

"Statutory provisions concerning review of agency action by the Courts of Appeals do not in and of themselves . . . preclude District Court jurisdiction." *Elmo Division of Drive-X Co. v. Dixon,* 348 F.2d 342, 343 (D.C.Cir.1965). Plaintiffs herein have demonstrated that they are likely to suffer continuing harms as a result of agency action alleged to be beyond the scope of the agency's authority. The actions complained of are not final agency actions subject to review in the court of appeals, but may be appropriately reviewed within this Court's jurisdiction. *Elmo Division of Drive-X v. Dixon,* supra.

■ In addition to alleging jurisdiction under Section 1337, the Plaintiffs have included claims in their amended complaint that the actions of FERC violate Plaintiffs' due process rights. This gives rise to jurisdiction under 28 U.S.C. Section 1331, since the allegations raise a question under the Fourth Amendment. The substance of the Plaintiffs' claims are that FERC has engaged in a course of action which contravenes the Fourth Amendment's prohibition against unreasonable search and seizure. It cannot be doubted that administrative subpoenas are subject to the constraints of the Fourth Amendment.

"It is now settled that, when an administrative agency subpoenas corporate books or records, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome. The agency has the right to conduct all reasonable inspections of such documents which are contemplated by statute, but it must delimit the confines of a search by designating the needed documents in a formal subpoena. In addition, while the demand to inspect may be issued by the agency, in the form of an administrative subpoena, it may not be made and enforced by the inspector in the field, and the subpoenaed party may obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply." *See v. Seattle,* 387 U.S. 541, 544–5, 87 S.Ct. 1737, 1740, 18 L.Ed.2d 943 (1967).

The Commission has repeatedly argued that the Plaintiffs' method of contesting the validity of the subpoena is not proper, asserting that the Plaintiffs' claims are not ripe for review and that the correct procedure is for the Plaintiffs to refuse compliance with the subpoena and for the agency to bring an enforcement action. It is argued that the Plaintiffs may assert their rights only after the agency has sought judicial enforcement. Such an argument elevates form over substance. The Plaintiffs contend that the subpoenas are invalid. Defendant alleges that the subpoenas are valid, and it wishes to continue its private, secret investigation. Although it has not formally counterclaimed for enforcement, that is the result it seeks, else it would not be contesting Plaintiffs' claims so vigorously. In other actions where the party subpoenaed has been the first to bring suit, and the agency by counterclaim has sought enforcement of the subpoena, the courts have found jurisdiction. *Comet Electronics, Inc. v. U.S.,* supra; *Servitron, Inc. v. I.C.C.,* supra. To find a difference in this case, merely because FERC has done all it can to enforce its subpoenas except make a formal request of this Court to do so, would make us slavish adherents of form over substance.

FERC asserts that only the Court of Appeals has exclusive jurisdiction of a matter such as this. As heretofore noted, that is only to review a final agency order. The Plaintiffs couldn't ever get their present complaint to the Court of Appeals at this stage of the proceedings. Yet, if there is any merit at all to their position, they ought to have a forum in which they can be heard. To urge that they have an adequate remedy by refusing compliance and forcing FERC to bring an enforcement action is just another way of denying them a forum without giving them a chance to be heard. Their remedy is not adequate because FERC has also subpoenaed the other shippers' records

and an enforcement action between these plaintiffs and FERC would not affect those subpoenas. In summary, Plaintiffs' amended complaint contains substantial allegations sufficient to give rise to jurisdiction under Section 1337 due to the necessity of construing the Interstate Commerce Act. It further alleges facts concerning rights under the Fourth and Fifth Amendments, as well as the I.C.A., sufficient to give rise to jurisdiction under Section 1331. Finally, the agency has in effect asked this Court to enforce the subpoenas, by not enjoining its investigation, and thus jurisdiction is conferred by the Interstate Commerce Act's explicit provisions. For these reasons, the Court concludes that it has jurisdiction.

■ The next issue to be decided is that of whether or not the Plaintiffs' activities are intrastate in character, so that FERC is without authority to regulate them or to investigate them. The evidence is undisputed that:

(1) The Belle Fourche Pipeline Company operates its Wyoming System entirely within the State of Wyoming. It is a separate non-connected pipeline system from its Montana-North Dakota System and its Silvertip System (from Wyoming to Montana) which are both interstate in character, and is regulated by the Wyoming Public Service Commission as an intrastate common carrier. The Wyoming System receives oil from the Powder River Basin area of Wyoming and transports it to receiving tanks, owned by the receiving carrier, which at Fiddler Creek are connected with the WYCO Pipeline, and with the Butte Pipeline at Osage, and the Continental and Platte pipeline at Glenrock and Guernsey, and the Amoco pipeline system at Fort Laramie. From such tankage terminals, shippers can move the oil to refineries in four Wyoming cities with a refining capacity of 100,000 barrels, which is more than the capacity of the Belle Fourche line; but from them the oil can also be shipped on, out of the State. Belle Fourche doesn't buy any of the oil that it transports. While Belle Fourche has filed duplicate tariffs with FERC covering the Wyoming system, such tariffs do not provide for joint or "through" oil movements and these are "local" in nature. Belle

Fourche since 1976 has made no interstate oil shipments over the Wyoming system.

(2) Black Hills Trucking operates tank trucks that transport oil from producing wells to the Belle Fourche Pipeline. Although regulated by the Wyoming Public Service Commission and the ICC, such trucking activities occur wholly within the State and are intrastate in nature.

(3) Equitable Oil Purchasing Company operates a "gravity bank" in Wyoming, for the purpose of compensating shippers for increases or decreases in the value of their crude oil resulting from commingling of oil in the pipeline's common stream. While shippers are not required to participate in the gravity bank, if they do not do so their oil must not be commingled or it cannot be shipped if it is not compatible with other shippers' oil. Such activities are conducted in Casper, Wyoming, relate to intrastate oil movements, and are intrastate in character.

(4) Eighty-Eight Oil Company purchases and sells 60% to 70% of the oil transported over the Wyoming System. The oil is bought and sold by "in-line transfers" while it moves in the pipeline, there being an average of three transfers for each barrel. As a result of such transfers, the shippers at the time of initial shipments do not know their final destinations. The oil may also be held within the Wyoming System as a line balance of the shipper, which is available for future delivery on order of the shippers.

In its opinion in *Northville Dock Pipe Line Corp.* and *Consolidated Petroleum Terminal, Inc.,* issued February 6, 1981, No. 111, Docket No. OR78–5, 22 F.P.S. 5–183, the Defendant, Federal Energy Regulatory Commission, quoted the following statement of the Interstate Commerce Commission from *Transportation of Petroleum and Petroleum Products by Motor Carriers Within a Single State,* 71 M.C.C. 17 (1957), as setting forth the correct criteria for determination of whether a transportation activity is intrastate:

"(1) At the time of shipment there is no specific order being filled for a specific quantity of a given produce to be moved

through to a specific destination beyond the terminal storage, (2) the terminal storage is a distribution point or local marketing facility from which specific amounts of the product are sold or allocated, and (3) transportation in the furtherance of this distribution within the single state is specifically arranged only after sale or allocation from storage. These things, it is believed, are basically sufficient to establish that the continuity of transportation has been broken, that the initial shipments have come to rest, and that the interstate journey has ceased."

The Defendant held in *Northville,* on the basis of this authority, that even though oil was transported in interstate commerce to an in-state pipeline system and thereafter within a single state, the pipeline operation was intrastate. In *Jet Fuel by Pipeline Within the State of Idaho,* 311 I.C.C. 439 (Div 2, 1964), the Interstate Commerce Commission there held, where an oil pipeline wholly within the State of Idaho connected to an interstate pipeline that ran from Salt Lake City to Idaho and on to Washington, that the ICC lacked jurisdiction over the intrastate shipments of jet fuel in Idaho. Similarly, in *United States Department of Defense v. Interstate Storage and Pipeline Corp.,* 353 I.C.C. 397, the I.C.C., in addressing the issue of whether the movement of petroleum within a single state but preceded by interstate barge transportation was in fact in interstate commerce, said:

"... In determining whether a carrier or carriers are engaged in interstate commerce, the Commission must determine the essential character of the commerce. *One of the most important factors in determining the essential character is the fixed and persisting intent of the shipper, or the one for whose benefit the shipment is made....* (Citations omitted.) ... Other factors to be considered are the character of the billing, that is, whether it is local or through, *change of ownership during the course of transportation, knowledge or lack of it on the part of the consignor of the ultimate destination or consignees,* the character and length of

the transaction taking place at the point of interruption, *the intent on the part of the consignor with reference to the final destination,* breaking of bulk and *commingling of the commodity* shipped with other shipments of the same commodity, *power of the owner of the property to divert the shipment after the initial movement has begun,* and the general practices and customs prevailing in a particular industry or trade. No single factor is necessarily to be regarded as determinative in the final conclusion as to the essential character of the traffic. *Thomas Keery Co., Inc., v. New York, O. & W. Ry. Co.,* 206 I.C.C. 585, 588–589 (1935)."

This same view was adopted by the Ninth Circuit in *Southern Pacific Transportation Co. v. I.C.C.,* 565 F.2d 615 (9th Cir.1977), where it was held that shipments from canning plants in San Jose, California to a warehouse in Stockton, California, where the goods were stored before interstate or foreign movement, were in intrastate commerce and outside the regulating jurisdiction of the Interstate Commerce Commission, which had ordered the petitioners to desist from engaging in or contracting for certain trucking operations. The Court said:

"As the Commission correctly states in its opinion,

'Whether transportation is interstate or intrastate is determined by the essential character of the commerce, *manifested by shipper's fixed and persisting transportation intent at the time of the shipment,* and is ascertained from all of the facts and circumstances surrounding the transportation.' (120 M.C.C. at 242, Emphasis added.)

"The record establishes that the only intent manifested by the shipper in this case at the time of shipment (i.e., shipment from the canning plants) was to ship the goods to the warehouse for eventual transshipment to an as yet unknown destination—interstate, intrastate or foreign—and to assure their eligibility for transit credits which were available regardless of whether the ultimate transshipment was interstate, intrastate or foreign....

"It is not disputed that Del Monte, under the options available to it in the transit tariffs, did not decide the final destination of any shipment of goods until after the goods had come to rest in the Stockton warehouse. *The fact that most of the goods in the warehouse were eventually shipped to interstate or foreign destinations is not sufficient to give rise to fixed intent to engage in an interstate movement at the time the goods left the canning plants with their final destination still unknown.* Inasmuch as the goods remained under Del Monte's control at the Stockton warehouse and were not committed to a common carrier for an interstate or foreign movement until they left that warehouse, the requisite intent which governs the character of the movement was not formed until shipment from Stockton." (Emphasis added.)

Except for the fact that FERC here is conducting a "private" investigation where in *Southern Pacific Transp. Co. v. I.C.C.,* supra, there had issued a cease and desist order, the instant case is substantially on all fours with the latter. The shippers here do not know the destination of the oil at the time of shipment; it may ultimately reach an in-state refinery or may, after storage at the end of the Belle Fourche pipeline, be sent on out of state, but the oil is billed only to a destination or delivery point within Wyoming, where it comes to rest in storage prior to interstate transportation. At the time that the Plaintiffs take any actions with respect to the oil, it is not in interstate commerce, for its interstate journey, if any, has not begun. The oil is transported at rates established by "local" tariffs, rather than tariffs for "through" movements with another pipeline, and those are rates filed and approved by the Wyoming Public Service Commission. Belle Fourche has filed duplicate tariffs with FERC, so that interstate shippers may use those rates in transporting oil over the Wyoming system. The Wyoming Public Service Commission has characterized the Belle Fourche system as "substantially a local gathering and feeding operation" preliminary to interstate trunk line transportation. *Belle Fourche Pipeline*

*Co. v. Butte Pipeline Co.,* 51 P.U.R.3d 189 (Wyo.P.S.C., 1963). We agree and so find.

The activities of Black Hills Trucking and Equitable Oil Company are likewise intrastate in character. It is, of course, possible that Eighty-Eight Oil Company may own oil in the Wyoming pipeline system which is certainly shipped by it over a connecting interstate pipeline in interstate commerce. But, the evidence before the Court does not show that; it shows only that Eighty-Eight buys and sells 60% to 70% of the oil in the line but that such oil has no known destination at the time of shipment beyond the ends of the Wyoming Belle Fourche system. Under the aforementioned tests of the interstate commerce quality of its commerce, we must hold that the activities of Eighty-Eight Oil Company, to which proof has been offered, are also intrastate in nature.

This brings us to the principal issue of this case: Whether or not the investigatory power of FERC permits it to investigate an intrastate activity and copy all of the records amassed by it over a 5-year period?

FERC cannot confer power upon itself. Its subpoenas must be issued in furtherance of an authorized statutory objective. 5 U.S.C. Section 555(c) provides that:

"Process, requirement of a report, inspection, or other investigative act or demand may not be issued, made, or enforced except as authorized by law."

The Plaintiffs could have ignored the command to produce if FERC's investigation is not expressly or impliedly authorized by statute—a point that FERC concedes. But, they seek here a broader remedy, that of judicial suppression of the entire private investigation of FERC, in order to protect their shippers whose records are also subpoenaed, on the ground that these activities are intrastate.

Under Section 1 of the Interstate Commerce Act it is stated that the act shall apply to common carriers engaged in the "transportation of oil or other commodity ... by pipeline ... from one State or territory of the United States ... to any other State or territory of the United States ...," and it states that it shall *not*

apply "To the transportation of . . . property . . . wholly within one State. . . ." 49 U.S.C. Section 1. This authority has been conferred upon the Defendant FERC by 42 U.S.C. Sections 7155 and 7172(b). Sections 12, 13 and 20 of 49 U.S.C. provide the statutory authority for the investigatory power of the I.C.C. and now FERC by granting "authority . . . to inquire into and report on the management of the business of all common carriers subject to the provisions of this chapter . . . ," 49 U.S.C. Section 12; and, "Whenever in any such investigation the Commission . . . finds that any such rate, fare, charge, classification, regulation or practice causes any undue or unreasonable advantage, preference, or prejudice as between persons or localities in intrastate commerce on the one hand and interstate or foreign commerce on the other hand, or any undue, unreasonable, or unjust discrimination against, or undue burden on interstate or foreign commerce . . . , it shall prescribe the rate . . . to be charged, and the classification regulation or practice thereafter to be observed. . . ." 49 U.S.C. Section 13(4), and 49 U.S.C. Section 20 grants authority to require from carriers reports and to inspect accounts, records and memoranda.

Initially, in the development of administrative law "fishing expeditions into private papers" were denounced by no less than Mr. Justice Holmes in *Federal Trade Commission v. American Tobacco Co.,* 264 U.S. 298, 305, 44 S.Ct. 336, 337, 68 L.Ed. 696 (1924), who said that only the most explicit language would lead him to believe that Congress "intended to authorize one of its subordinate agencies to sweep all our traditions into the fire and to direct fishing expeditions into private papers on the possibility that they may disclose evidence of crime." The Plaintiffs have relied on this authority, but unfortunately for them it is no longer the law. In the words of Prof. Kenneth Culp Davis, in his *Administrative Law Text,* p. 53, summarizing the change:

> During the decade of the 1940's, constitutional principles concerning the administrative power of investigation were largely turned right around backwards. The change occurred not only in the fed-

eral courts but also in most of the state courts. A new set of principles was established, built on the basic idea that the administrative power of investigation must be fully effective. As regulation has expanded and intensified, the administrative quest for facts and more facts has gained momentum and has seemingly become an irresistible force. This force has collided with what at first were apparently immovable constitutional principles concerning privacy, searches and seizures, self-incrimination, and freedom from bureaucratic snooping. The constitutional principles remained firm for a time but gradually weakened and crumbled. The force proved irresistible. Remnants of the constitutional principles are left standing, but only to an extent clearly consistent with permitting administrative agencies freely to secure factual materials needed to carry out the programs they administer.

See also Davis, The Administrative Power of Investigation, 56 Yale Law Journal 1111; Note, 58 Georgetown Law Journal 345; Note, 44 Chicago-Kent Law Review 50.

In *Endicott Johnson Corp. v. Perkins,* 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1943), the Court held that in an enforcement proceeding an agency was not first required to demonstrate that the information sought by its subpoena was competent or relevant to any lawful purpose of the Secretary of Labor. The agency was not required to prove that the information demanded tended to prove a violation of the substantive act administered by it. The conduct of investigation was thus left up to the Secretary. The Court held that jurisdiction to conduct an investigation exists if the inquiry is of the general kind the official is authorized to make.

Thereafter, in *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946), where the Wage and Hour Administrator had subpoenaed records of the payroll as well as the sources of the advertising and news of a newspaper publishing company, which claimed to be in intrastate commerce, the Supreme Court

held that the Administrator was empowered by statute to investigate to discover and procure evidence, as long as the subpoena was not too indefinite or too broad, and that the inquiry was authorized by law and the materials were relevant. The Court held that the requirements of the Fourth Amendment are met if the investigation be "for a lawfully authorized purpose within the power of Congress to command."

Finally, any doubt as to whether it is permissible for an agency to engage in fishing expeditions, seeking evidence of both violations and agency jurisdiction over the alleged violators, was put to rest by the Supreme Court in *U.S. v. Morton Salt*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950). In that case the FTC sought to require certain corporations to file reports demonstrating how they had complied with a court decree enforcing a Commission cease and desist order. The plaintiff contested the requirement of a report, asserting, in part, that the Fourth and Fifth Amendments prohibited such an intrusion. The Supreme Court, however, recognized the broad investigatory powers conferred upon federal agencies to carry out their statutory duties, in holding that "[e]ven if one were to regard the request for information in this case as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest." See also *U.S. v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); *S.E.C. v. Brigadoon Scotch Distributing Co.*, 480 F.2d 1047 (2nd Cir.1973).

The broad authority to investigate potential wrong-doings extends beyond the mere scope of an agency's regulatory authority. In order to conduct an investigation an agency may properly seek information from parties not ordinarily subject to the agency's jurisdiction. Precisely this issue was raised and decided in *Comet Electronics, Inc. v. U.S.*, 381 F.Supp. 1233, affd. 420 U.S. 999, 95 S.Ct. 1439, 43 L.Ed.2d 758 (1975), and *Servitron, Inc. v. ICC*, 380 F.Supp. 1344, affd. 420 U.S. 999, 95 S.Ct. 1440, 43 L.Ed.2d 758 (1975). Those cases both involved challenges to ICC subpoenas

issued in conjunction with an investigation of two rail carriers. Plaintiffs in each case were persons or companies who had done business with the carriers, and whose records were subpoenaed by the ICC. The Court in each case was asked to interpret the scope of the agency's investigatory powers under the same statute in question here, 49 U.S.C. Section 12(1). That statute, in pertinent part, reads as follows:

> [F]or the purposes of this chapter the Commission shall have power to require, by subpoena, the attendance and testimony of witnesses and the production of all books, papers, tariffs, contracts, agreements, and documents relating to any matter under investigation.

The plaintiffs therein argued that the above language referred only to common carriers subject to ICC jurisdiction, and that the ICC could not subpoena materials from an outside party. In rejecting this position, the *Comet* court stated:

> Plaintiffs' construction is an unreasonably narrow interpretation of the broad statutory mandate given the Commission by Congress. The plain language of Section 12(1) states that the Commission has the "power to require, by subpoena, the attendance and testimony of witnesses." There is *no restriction concerning* what witnesses may be called other than that their testimony must relate to "matters under investigation."

. . . . .

> We must further conclude that the language of the statute must be read as written and that the Commission's authority to subpoena witnesses extends to persons not named as parties to an ICC investigation but who nevertheless may be able to give testimony *or produce documents* which may be relevant to a proper Commission investigation. *Comet Electronics*, supra, at 1238–1239.

Similarly, in *Servitron*, the District Court found that:

> [W]hat the statute really does is to permit the Interstate Commerce Commission to investigate, by obtaining testimony

and other evidence which is germane to their investigation.

.    .    .    .    .

This does not mean that the Interstate Commerce Commission has the unlimited authority to delve into the business affairs of a person or company not under investigation.... If the things sought by the subpoena do not relate to the plaintiffs' business with the railroads under investigation, then the Commission does not have the right to obtain them. But it does have the right to obtain evidence from anyone whomsoever of things relating to the matter properly under its investigation. (Citing *ICC v. Baird,* 194 U.S. 25, 24 S.Ct. 563, 48 L.Ed. 860 (1904); *ICC v. Brimson,* 154 U.S. 447, 14 S.Ct. 1125, 38 L.Ed. 1047 (1894)). *Servitron, Inc. v. ICC,* supra, at 1347.

■ In the instant case FERC has initiated an investigation into possible violations of the I.C.A. which would have an impact on interstate commerce. This is clearly the kind of investigation contemplated by Section 12(1). *U.S. v. Morton Salt,* supra. An examination of matters concerning intrastate commerce is proper if the Commission is attempting to pursue its mandate to regulate interstate commerce, because even purely local activities may have an effect on interstate commerce. *Heart of Atlanta Motel v. U.S.,* 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964). Even though no complaint has been issued as a result of this investigation, the Commission may properly examine relevant material to determine whether a complaint or charge should or could be brought at all. "In the pre-complaint stage, an investigating agency is under no obligation to propound a narrowly focused theory of a possible future case." *F.T.C. v. Texaco, Inc.,* 555 F.2d 862, 874 (D.C.Cir.1977), cert. den., 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977). It is not the district court's job to forecast the probable results of the agency's inquiry and limit it accordingly. This determination is generally left to the agency. *Oklahoma Press v. Walling,* supra; *Endicott Johnson Corp. v. Perkins,* supra; *Tobin v. Banks & Rumbaugh,* 201 F.2d 223 (5th Cir.1953).

■ Accordingly, the Court concludes that the Commission may subpoena records of parties such as these which, although their businesses are intrastate in essential character and thus potentially outside the Commission's regulatory powers, relate to matters which are properly subject to investigation by the Commission. *McGarry v. S.E.C.,* 147 F.2d 389, 392 (10th Cir.1945); *Freeman v. Brown Brothers Harriman & Co.,* 357 F.2d 741 (2d Cir.1966).

Although the Commission has a general grant of authority to investigate possible violations of law relating to common carriers, its power to subpoena documents is not completely unchecked. The same courts which have conferred expansive investigatory powers upon administrative agencies have also decreed an outer limit to just how far an agency may go. "[T]he disclosure sought shall not be unreasonable." *Oklahoma Press v. Walling,* supra, at 208. Sufficient justification for sweeping investigations exists only if "the inquiry is within the authority of the agency, the demand is not too indefinite, and the information sought is reasonably relevant." *U.S. v. Morton Salt,* supra, at 652; *S.E.C. v. Blackfoot Bituminous, Inc.,* 622 F.2d 512 (10th Cir.1980).

> "It is now settled that, when an administrative agency subpoenas corporate books or records, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome.... and the subpoenaed party may obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply." *See v. Seattle,* 387 U.S. 541, 544–5, 87 S.Ct. 1737, 1740, 18 L.Ed.2d 943 (1967).

In *U.S. v. LaJet, Inc.,* 685 F.2d 1378 (E.M. App.1982) the Temporary Emergency Court of Appeals said: "The role of a reviewing court in a subpoena enforcement proceeding is limited to determining whether the subpoena was issued for a lawfully authorized purpose, and whether it seeks information relevant to the agency's inquiry."

This Court has already determined that the Commission's investigation is in pursuit of a clearly lawful purpose. The only remaining question is whether the requested documentation is reasonably relevant. "In its consideration of whether the subpoena is relevant to the agency's inquiry, the court will also consider whether it is sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." *U.S. v. LaJet,* supra, at 1380.

The party complaining that the subpoena should not be enforced bears the burden of demonstrating the irrelevancy or unreasonableness of the request. *S.E.C. v. Blackfoot Bituminous, Inc.,* supra, at 515; *F.T.C. v. Standard American, Inc.,* 306 F.2d 231, 235 (3rd Cir.1962); *Kilgore National Bank v. Federal Petroleum Board,* 209 F.2d 557, 560 (5th Cir.1954). When a respondent shows that the subpoena is irrelevant or burdensome, the district court may modify or deny enforcement of the subpoena. *Goodyear Tire and Rubber Co. v. National Labor Relations Board,* 122 F.2d 450 (6th Cir.1941). Although the inconvenience to Plaintiffs of the subpoena proceeding was somewhat mollified by the Commission's employees coming to the business premises of the Plaintiffs to copy their records, the record also reflects that the presence of Commission investigators severely disrupted the day-to-day operations of the Plaintiffs. FERC has already copied some 13,000 of Plaintiffs' documents and records, and seeks to rifle through virtually all of Plaintiffs' records for the past 5 years. Plaintiffs, originally hoping to cooperate with FERC in providing requested documents, found the undertaking so disruptive that they terminated the invitation to enter their premises and inspect their files, and brought this action. The present subpoenas, such as that to H.A. True, Jr. and Eighty-Eight Oil Company, which is 11 pages, single-spaced, ask for all documents generated by a Plaintiff company from January 1, 1976 to January 19, 1982, the date of the subpoena, regarding policies, document distribution, accounting procedures, duties of officers and employees, work records of employees, organization charts, code books, all contracts, leases or agreements, virtually all documents "generated during the period January 1, 1963 to the present" relating to its business involving the trucking of oil, all contracts, agreements and correspondence or memoranda from 1976 to the present relating to its sales or exchanges of crude oil, or offers to sell it, its blending of hydrocarbons, and its communications with the other Plaintiffs. If the Court were to try to think of a document that the Plaintiffs might have that is not covered by the subpoenas, it could not do so. These subpoenas require a production of very extensive magnitude, with very little direction or specificity; as such, they do not fall within the requirement of being "reasonably relevant." *U.S. v. Morton Salt,* supra. Instead, they are overbroad and "unreasonably burdensome." *See v. Seattle,* supra. FERC now has sufficient information regarding the business practices of the Plaintiffs from the 13,000 copies of documents in its possession, and it has spent several days disrupting the Plaintiffs' businesses. It should now analyze and consider that discovery, and then should be capable of formulating specific, relevant subpoena requests which are not unduly burdensome, unlike the present requests. Therefore, this Court will not require the Plaintiffs to comply with these subpoenas at issue in this case.

The Plaintiffs, however, have sought more than a mere declaration that the subpoenas issued to them are invalid. They ask that the entire investigation of the Federal Energy Regulatory Commission be enjoined, and that the subpoenas issued to persons or companies doing business with the Plaintiffs also be declared invalid. While it is within this Court's power to deny enforcement of these subpoenas issued to Plaintiffs, which are overbroad and unreasonably burdensome, this Court cannot determine that the investigation as a whole should be halted at this stage. As indicated earlier, investigations into potentially unlawful behavior are within the Commission's power. 49 U.S.C. 12(1); *U.S. v. Morton Salt,* supra. Claims that the Commission has no authority to regulate the actions of the Plaintiffs are premature at this

stage. The Commission has made no such determination and Plaintiffs are not aggrieved by the mere potential that some action might be taken by FERC. Claims of lack of coverage are not ripe for review at this stage of the administrative process. *Endicott Johnson Corp. v. Perkins,* supra.

Plaintiffs also allege as grounds for enjoining the investigation that the Federal Energy Regulatory Commission's Rules Relating to Investigation, 18 *C.F.R.* Part 1b, violate the ICC's own rules, were improperly promulgated, and exceed the agency's statutory authority. Given the broad power of the Commission to conduct investigations, this Court has doubts that the Commission has exceeded its authority in conducting this investigation except by its unusually sweeping subpoenas. However, raising the defense that "star chamber" investigations are without the proper authority of the agency, and thus the respondents need not comply with subpoenas issued in furtherance of the investigation, is premature. "As a general rule, substantive issues which may be raised in defense against an administrative complaint are premature in an enforcement proceeding." *F.T.C. v. Texaco, Inc.,* 555 F.2d 862, 879 (D.C.Cir. 1977), cert. den. 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977). Falling within the realm of substantive defenses which do not bear upon the enforcement proceeding are: claims that collateral estoppel make the investigation invalid (*F.T.C. v. Texaco, Inc.,* supra); allegations that the act upon which the investigation is based do not apply to respondents (*Endicott Johnson v. Perkins,* supra); suggestions that the agency's investigation is improper because respondents are not within the agency's jurisdiction (*F.M.C. v. Port of Seattle,* 521 F.2d 431 (9th Cir.1975); *S.E.C. v. Savage,* 513 F.2d 188 (7th Cir.1975)). The analysis which this Court should engage in is limited to that described in *See v. City of Seattle,* supra. "[I]n holding that an administrative subpoena must be enforced if the information is relevant to a lawful purpose of the agency, and not unduly indefinite or unreasonably burdensome, the Supreme Court has clearly rejected other defenses." *F.T.C. v. Texaco,* supra at 879.

Plaintiffs have expressed strong objections to the nature of the investigation being undertaken by FERC. However, they have not presented justification for this Court's termination of a facially valid investigation being carried out pursuant to a statutory mandate of the Interstate Commerce Act and presumably valid regulations. Accordingly, Plaintiffs' prayer for injunctive relief must be denied, except that FERC must be prohibited from pursuing its overbroad present subpoenas against the Plaintiffs and the Plaintiffs must be excused from compliance with them.

Further, this Court does not presently have before it the third-parties sought to be investigated by FERC because they allegedly have information concerning their business relationships with the Plaintiffs, and of course, those parties have not in this proceeding challenged the subpoenas. The Plaintiffs herein do not have standing or authority to raise such objections for them. Thus, it would be clearly improper to grant the injunctive relief sought by the Plaintiffs with regard to subpoenas issued by the Federal Energy Regulatory Commission to the third-party shippers which have utilized the facilities of the Plaintiffs.