The **UNITED STATES of America,**
**Petitioner-Appellee,**

v.

**LaJET, INC., Respondent-Appellant.**

**LaJET, INC., Plaintiff-Appellant,**

v.

**DEPARTMENT OF ENERGY, et al.,**
**Defendants-Appellees.**

Nos. 5–76, 5–78.

Temporary Emergency Court of Appeals.

Argued July 12, 1982.

Decided Aug. 5, 1982.

Rehearing and Rehearing En Banc
Denied Sept. 7, 1982.

---

M. Susan Carlson, Dept. of Justice, with whom J. Paul McGrath, C. Max Vassanelli and R. John Seibert, Washington, D. C., of the same agency, and Kenneth J. Mighell, U. S. Atty., Fort Worth, Tex., were on the brief, for defendants-appellees.

Robert M. Montgomery, Jr., Paul, Weiss, Rifkind, Wharton & Garrison, and Jack McKay, Kevin I. MacKenzie, Hogan & Hartson, Washington, D. C., were on the brief, for respondent-appellant in No. 5–76 and plaintiff-appellant in No. 5–78.

Before BECKER, SPEARS and BROWN, Judges.

SPEARS, Judge.

This consolidated appeal by LaJet, Inc., a small independent oil producer, challenges orders entered by the United States District Court for the Northern District of Texas, dismissing LaJet's action against the Department of Energy (DOE), and enforcing a DOE subpoena issued to LaJet. We affirm.

### FACTUAL BACKGROUND

In November of 1978, DOE began an audit of LaJet, which continued until June 15, 1979, when a conference between the two parties was held, but there were no

further communications between them until February of 1981. At that time LaJet was notified by DOE that it was in a position to complete the examination of LaJet's records; however, no regulatory violations were alleged. LaJet objected to such an examination and DOE issued a subpoena for the records on April 1, 1981. After LaJet's request for administrative review of the subpoena was denied, it instituted suit against DOE requesting declaratory and injunctive relief from the subpoena.

Seven months later DOE filed a petition to enforce the subpoena. LaJet then filed a motion to consolidate the two actions, and DOE moved to dismiss LaJet's suit on the ground that it was premature.

After a hearing on all pending motions, the district court entered orders 1) denying consolidation of the cases and dismissing LaJet's action against DOE; and 2) upholding the DOE subpoena, but modifying it by limiting the period for review of the documents to sixty (60) days, and ordering DOE to review the records at LaJet's place of business, with DOE paying the expense of reproduction.

LaJet appealed both cases, and by the order of this Court the appeals were consolidated.

### STANDARD OF REVIEW

■ The role of a reviewing court in a subpoena enforcement proceeding is limited to determining whether the subpoena was issued for a lawfully authorized purpose, and whether it seeks information relevant to the agency's inquiry. *United States v. Pasco Petroleum Co., Inc.*, 633 F.2d 956, 959 (TECA 1980), *cert. denied*, 450 U.S. 955, 101

S.Ct. 1698, 68 L.Ed.2d 195 (1981). In its consideration of whether the subpoena is relevant to the agency's inquiry, the court will also consider whether it is sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome. *See v. City of Seattle*, 387 U.S. 541, 544, 87 S.Ct. 1737, 1740, 18 L.Ed.2d 943 (1967).

### LAWFULLY AUTHORIZED PURPOSE

■ LaJet's contention that the subpoena was not issued for a lawfully authorized purpose is without merit. This Court has recognized that Congress conferred broad subpoena authority on DOE, and "... has repeatedly upheld enforcement of DOE's and its predecessor agencies' subpoenas seeking similar information relevant to the same lawfully authorized purpose." *United States v. Andrus Energy Corporation* (consolidated with *United States v. Robison Energy, Inc.*), 678 F.2d 1081 (Em.App.1982), and the authorities cited therein; and *United States v. Lotus Petroleum, Inc.*, 678 F.2d 1082 (Em.App.1982).

LaJet insists that the subpoena was not lawfully authorized because Executive Order No. 12287, issued on January 28, 1981, decontrolled crude oil and refined petroleum products, and directed the Secretary of Energy to promptly eliminate the reporting and record keeping requirements, except for those that are necessary for emergency planning and energy gathering purposes.[1] It argues that when the President ordered that those requirements be eliminated, he "certainly cannot have intended that firms ... not then the subject of ongoing enforcement proceedings, (that) had previously been audited without the discovery of

---

1. Executive Order 12287 provides in pertinent part:

Section 1. All crude oil and refined petroleum products are exempted from the price and allocation controls adopted pursuant to the Emergency Petroleum Allocation Act of 1973, as amended. The Secretary of Energy shall promptly take such action as is necessary to revoke the price and allocation regulations made unnecessary by this Order.

Section 2. Notwithstanding Section 1 of this Order:

(a) All reporting and record-keeping requirements in effect under the Emergency Petroleum Allocation Act, as amended, shall continue in effect until eliminated or modified by the Secretary of Energy. The Secretary of Energy shall promptly review those requirements and shall eliminate them, except for those that are necessary for emergency planning and energy information gathering purposes required by law.

46 Fed.Reg. 9909 (Jan. 30, 1981).

any regulatory violations, should continue to be subjected to unwarranted 'fishing expeditions' ..." Yet, says LaJet, that is precisely what will happen if DOE prevails in this lawsuit.

LaJet's position is that the Secretary of Energy's regulation 210.1,[2] which provides that record keeping requirements in effect on January 27, 1981, will remain in effect for all transactions prior to February 1, 1981, conflicts with Executive Order 12287, and is, therefore, invalid.

DOE counters that the records required to be kept are necessary to determine compliance with price and allocation regulations authorized by the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 751 *et seq.*, as amended; and that while § 760g of the Act authorized the President to decontrol crude oil and refined petroleum products, prior to September 30, 1981, "it in no way abrogated the legislative mandate that the expiration of this authority shall not affect Administrative or Civil Actions, whether or not pending, which are based upon acts committed prior to such expiration."[3] Since it finds the provisions of Section 2 of the Executive Order consistent with that view, DOE perceives no conflict between the Executive Order and regulation 210.1.

In our opinion, the Executive Order did not abolish DOE's authority to continue the audit of LaJet, begun more than two years earlier, even though there had been a lapse of eighteen months, and no regulatory violations had been discovered. Nor did the Executive Order put an end to LaJet's obligation as an oil producer to maintain records required during the regulatory period.[4] Realistically, the most practical way to determine whether violations have occurred is by an examination of the records,[5] and we find nothing in § 760g, Executive Order 12287, or § 210.1 to indicate any intention to grant amnesty for any possible violations occurring prior to the effective date of the Executive Order.

## RELEVANT TO AGENCY'S INQUIRY

The DOE subpoena seeks documents and records relating to transactions involving crude oil. The information sought is clearly relevant to the agency's inquiry into LaJet's compliance with the regulations.

LaJet argues that the scope of the subpoena is unduly broad and unreasonably burdensome. The record demonstrates that the district court considered this argument and modified the subpoena.[6] As modified, the subpoena seeks "similar information relevant to the same lawfully authorized purpose" to those before this Court in *United States v. Robison Energy, Inc.*, (consolidated with *United States v. Andrus Energy*

---

**2.** 10 C.F.R. 210.1 (46 Fed.Reg. 20508, April 3, 1981), promulgated subsequent to the issuance of Executive Order 12287, provides:

The recordkeeping requirements that were in effect on January 27, 1981 in Parts 210, 211 and 212 will remain in effect for (1) all transactions prior to February 1, 1981; and (2) all allowed expenses incurred and paid prior to April 1, 1981 under § 212.78 of Part 212. These requirements include, but are not limited to, the requirements that were in effect on January 27, 1981 in § 210.92 of this Part; in §§ 211.-67(a)(5)(ii); 211.89; 211.109; 211.127; and 211.223 of Part 211; and in §§ 212.78(h)(5)(ii); 212.78(h)(6); 212.83(c)(2)(iii)(E)(I); 212.-83(c)(2)(iii)(E)(II); 212.83(c)(2)(iii) "Fit"; 212.-83(i); 212.93(a); 212.93(b)(4)(iii)(B)(I); 212.-93(i)(4); 212.94(b)(2)(iii); 212.128; 212.132; 212.172; and § 212.187 of Part 212.

**3.** 15 U.S.C. § 760g provides: "... authority to promulgate and amend any regulation or to issue any order under this chapter shall expire on midnight September 30, 1981, but such expiration shall not affect any action or pending proceedings, administrative civil or criminal, not finally determined on such date, nor any administrative, civil, or criminal action or proceedings, whether or not pending, based upon any act committed or liability incurred prior to such expiration date."

**4.** The regulatory period extended from May 1973 through January 28, 1981.

**5.** LaJet agreed that the records sought by the subpoena have been maintained by it and are available. These records must be maintained and preserved for a period of seven years after the day in which the relevant transaction or other recorded events occurred. See § 210.92, included in Regulation 210.1 (Footnote 2, supra).

**6.** See *Factual Background*, supra, page 2.

*Corp.*), 678 F.2d 1081 (Em.App.1982), and the authorities cited therein.[7]

DISMISSAL OF LAJET'S ACTION AGAINST DOE

LaJet's asserts that the district court was in error in dismissing counts one through four of its actions against DOE for lack of "ripeness". "In determining whether a challenge to an administrative regulation is ripe for review, a twofold inquiry must be made: first to determine whether the issues tendered are appropriate for judicial resolution, and second to assess the hardship of parties if judicial relief is denied at that stage." *Toilet Goods Association, Inc. v. Gardner,* 387 U.S. 158, 162, 87 S.Ct. 1520, 1523, 18 L.Ed.2d 697 (1967); *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); *Marathon Oil Company v. U. S. Department of Energy,* 642 F.2d 436, 438 (Em.App.1981).

■ Counts one and two of LaJet's action against DOE involved challenges to the recordkeeping regulation; count three alleged harassment of LaJet by DOE; and count four alleged that the audit was barred by laches. Since any complaint as to the validity of the audit itself may be raised in any administrative enforcement action resulting from the audit, or may be considered in any district court review of a final agency determination of a regulatory violation, the district court did not err in dismissing the four counts without prejudice to LaJet's right to pursue the matter further "after entry of some final order by the Department of Energy". *See Reisman v. Caplin,* 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964); *Wearly v. Federal Trade Commission,* 616 F.2d 662 (3rd Cir. 1980); *American Motors v. Federal Trade Commission,* 601 F.2d 1329 (6th Cir. 1979), *cert. denied,* 444 U.S. 941, 100 S.Ct. 294, 62 L.Ed.2d 307 (1979); *Atlantic Richfield Co. v. Federal Trade Commission,* 546 F.2d 646 (5th Cir. 1977); *Anheuser-Busch, Inc. v. Federal Trade Commission,* 359 F.2d 487 (8th Cir. 1966).

After judgment was entered with respect to the dismissal of the four counts, the district court granted LaJet's motion for a stay pending appeal of the order requiring LaJet to comply with the DOE subpoena. In light of our disposition of this case, the stay should now be dissolved.

CONCLUSION

In conclusion the Court finds that the DOE subpoena was issued for a lawfully authorized purpose; that the subpoena seeks information relevant to the agency's inquiry; that the dismissal of Counts I through IV of LaJet's action against DOE was not error; and that the stay order entered by the district court on March 26, 1981, should be DISSOLVED, and it is SO ORDERED.

The Judgment of the District Court is AFFIRMED.

7. In Robison, supra, the period of time for which the subpoena sought documents was from August 1973 through January 27, 1981, whereas, the subpoena here covers the month of May, 1973, and the period from November 1, 1973 through January 27, 1981.