**UNITED STATES of America and Jane O'Neill, Petitioners-Appellees,**

v.

**THRIFTYMAN, INC., Thriftyman Enterprises, Inc., M & W Oil Company, Sunbelt Gasoline Company, and John B. Meaders, Respondents-Appellants.**

**No. 5–83.**

Temporary Emergency Court of Appeals.

Submitted on the briefs.

Decided March 11, 1983.

Steven Schaars and Joan L. Goldfrank, Collier, Shannon, Rill & Scott, Washington, D.C., for respondents-appellants.

James A. Rolfe, U.S. Atty., and Paula Mastropieri-Billingsley, Asst. U.S. Atty., Dallas, Tex., for petitioners-appellees.

Before GRANT, BECKER and PECK, JJ.

WILLIAM H. BECKER, Judge.

This is an appeal from the Order of the United States District Court for the Northern District of Texas which granted the petition of the United States, on behalf of the Department of Energy (DOE), to enforce, against appellants, several administrative subpoenas *duces tecum* for documents described in the subpoenas. For the reasons which follow, we affirm the Order of the District Court.

## THE FACTS

In February 1980, DOE commenced an on the premises (on-site) audit of appellant Thriftyman, Inc. (Thriftyman) to determine whether appellants had complied with the applicable Mandatory Price and Allocation Regulations of the DOE during an eight month period from May 1979 through December 1979 [Transcript of Hearing on Petition to Enforce Subpoena (Tr.) 4, 7, 12]. During the audit, a DOE auditor reviewed records for about a month, departed, and returned with a second DOE auditor for an additional two weeks (Tr. 12–13). The two DOE auditors were not auditors of the Special Investigation Unit (SIU) of the DOE (Tr. 13–14). They were permitted to inspect all the documents that they requested during the on-site audit (Tr. 41–45), but only two or three "sample" copies of the inspected records were made (Tr. 6–7).

In May 1980, after an indication of a probable willful violation of the regulations, the scope of the on-site audit was expanded and referred (by a "nomination") to the SIU to determine if there had been a willful violation of the regulations (Tr. 7, 14, 23, 25, 29).

On July 29, 1980, the DOE issued a Notice of Probable Violation (NOPV) to Thriftyman. The NOPV stated, among other things, that the DOE had reason to believe that "applicable provisions of law" had been violated. A response to the NOPV was filed by Thriftyman on October 2, 1980.

On November 5, 1980, the DOE issued the subpoenas in question to appellants directing appellants to produce documents for examination and copying. The four subpoenas were authorized by appellee Jane O'Neill, a Team Leader of the SIU (Tr. 4, 5, 7, 8), and were signed by a Title Auditor of the SIU [Record (R.) Exhibit 5]. Each subpoena stated that it was issued "under the authority of § 206 of the Economic Stabilization Act of 1970, as amended, incorporated by § 5(a)(1) of the Emergency Petroleum Allocation Act of 1973, amended, § 13 of the Federal Energy Administration Act of 1974; §§ 645 and 705 of the Department of Energy Organization Act and 10 C.F.R. § 205.8 and § 205.201."

The appellants did not comply with the subpoenas (Tr. 6, 37). Therefore, on April 2, 1982, the United States, and Jane O'Neill on behalf of the DOE, filed a Petition to Enforce Subpoena in the District Court (R. Exhibit 2). On April 5, 1982, the District Court entered an order directing appellants to show cause, at a hearing before the District Court, why they should not comply with the subpoenas (R. Exhibit 3).

A Motion for Discovery was filed by appellants on June 2, 1982 (R. Exhibit 1). On June 3, the motion was referred by the District Court to a United States Magistrate for determination (R. Exhibit 1). After considering memoranda, in support of and in opposition to the motion, and the oral arguments of counsel, the Magistrate filed a report entitled "Order" on June 10, 1982, which denied appellants' Motion for Discovery (R. Exhibit 7). This report was later approved by the District Court (Thriftyman's Brief, 17).

On June 11, 1982, a hearing on the merits of the petition to enforce the subpoenas was held before the District Court (Tr., R. Exhibit 6). Thereafter, on June 21, 1982, the District Court entered an Order granting appellees' Petition to Enforce Subpoena (R. Exhibit 8). In that Order the District Court concluded, among other things, that "the subpoenas were issued pursuant to a lawfully authorized purpose"; that "the information sought is necessary and reason-

ably relevant to DOE's task of determining compliance with pricing and allocation regulations"; that "the DOE investigation does not have as its *sole* institutional objective the gathering of data for criminal prosecution"; that appellants' contention, that appellees must establish that the information sought in the administrative subpoenas is not already in the possession of the DOE, is not supported by prior opinions of this Court; and that appellants "failed to satisfy their burden of demonstrating that the investigation is for an improper purpose and thus in bad faith."

This is an appeal from the Order of the District Court granting the Petition to Enforce Subpoena.

## THE CONTENTIONS ON APPEAL

Appellants contend that the District Court erred in the following respects:

(1) in granting Appellees' petition to enforce administrative subpoenas which was filed after the expiration of the Emergency Petroleum Allocation Act of 1973;

(2) in ruling that the administrative subpoenas were issued for a lawful purpose when they had been issued after the [DOE] already had reviewed the subpoenaed documents and had taken agency action based upon those documents; and

(3) in denying Appellants' motion for discovery.

These contentions of appellants are discussed below in order.

## DISCUSSION

### I.

Appellants first contend that the four[1] subpoenas are not judicially enforceable because the Emergency Petroleum Allocation Act (EPAA) expired on September 30, 1981, before the Petition to Enforce Subpoena was filed in the District Court on April 2, 1982. This legal contention of appellants is not supported by the language of the EPAA and is contrary to the prior decisions of this Court.

Although Section 18 of the EPAA, 15 U.S.C. § 760g, provides in part that the "authority to promulgate and amend any regulation or to issue any order under [the EPAA] shall expire at midnight September 30, 1981," that section also provides for continuing judicial jurisdiction in certain actions. Judge Estes of this Court discussed that continuing jurisdiction, and the statutory authority therefor, in footnote 5 of *United States v. Empire Gas Corporation,* 547 F.2d 1147 (Em.App.1976), *cert. denied,* 430 U.S. 915, 97 S.Ct. 1326, 51 L.Ed.2d 592 (1977) as follows:

The Energy Policy and Conservation Act (EPCA), P.L. 94–163, December 22, 1975, amends and extends the EPAA through September 30, 1981; thereafter, the district courts and this court will have continuing jurisdiction over actions within the meaning of the general saving statute, 1 U.S.C. § 109, and the new saving statute, EPAA § 18, as amended by the EPCA. The amended saving statute, EPAA § 18, added by EPCA § 461, explicitly provides:

[S]uch expiration shall not affect any action or pending proceedings, administrative, civil, or criminal, not finally determined on such date [September 30, 1981], nor any administrative, civil, or criminal action or proceeding, whether or not pending, based upon any act committed or liability incurred prior to such expiration date.

Section 18 of the EPAA, quoted in part above, expressly sets forth two "exceptions" to the expiration of authority under the EPAA. First, the expiration of the EPAA on September 30, 1981, does not affect "any action or pending proceedings, administrative, civil, or criminal, not finally determined on such date." Second, the expiration provided for in Section 18 does not

---

**1.** The four separate subpoenas in the record (R. Exhibit 5) name the five appellants and are addressed to and served on the five appellants, namely, Thriftyman, Inc., Thriftyman Enterprises, Inc., M & W Oil Company, Sunbelt Gasoline Company, and John B. Meaders.

affect "any administrative, civil, or criminal action or proceeding, whether or not pending, based upon any act committed or liability incurred prior to such expiration date." Cf. United States v. California, 504 F.2d 750 at 754–757 (Em.App.1974), cert. denied, 421 U.S. 1015, 95 S.Ct. 2423, 44 L.Ed.2d 684 (1975), which discussed two similar "exceptions" to the expiration of the Economic Stabilization Act.

The first exception of Section 18 is not applicable on this appeal because the action in the District Court to enforce the subpoenas was not pending when the EPAA expired. We conclude, however, that the second exception of Section 18, quoted above, does apply in this case.

■ An action to enforce a DOE subpoena is a civil "action or proceeding" under the second exception of Section 18. Cf. United States v. Empire Gas Corporation, 547 F.2d 1147 at 1154–1155 (Em.App.1976), cert. denied, 430 U.S. 915, 97 S.Ct. 1326, 51 L.Ed.2d 592 (1977) in which it was concluded that a pending action to enforce a subpoena survived the termination of the Federal Energy Administration Act of 1974.

It was unnecessary to commence the action to enforce the subpoenas on or before the expiration date of the EPAA. The second exception of Section 18, 15 U.S.C. § 760g, is made expressly applicable by Section 18 "whether or not" the action was pending on September 30, 1981. (Emphasis added.)

The subpoenas in question were issued for documents to determine if appellants had violated DOE regulations during an eight month period from May 1979 through December 1979. And the action in the District Court was a proceeding to enforce these subpoenas. Thus, the action in the District Court was "based" upon the subpoenas which were "based" upon acts committed before the expiration of the EPAA. As such, the proceeding was within the continuing jurisdiction of the District Court expressly provided for by the second exception of Section 18 of the EPAA.

Further, this Court has held that nothing in Section 18 or Executive Order 12287 indicates "any intention to grant amnesty for any possible violations occurring prior to the effective date of the Executive Order." United States v. LaJet, Inc., 685 F.2d 1378 at 1381 (Em.App.1982) which discussed the authority of the DOE to issue subpoenas after the effective date of Executive Order 12287. In this respect, Section 18 of the EPAA provides for jurisdiction of the District Court and this Court which continues after the expiration of the EPAA. The DOE had the authority to seek enforcement of its subpoenas in United States district courts before the expiration of the EPAA. We conclude that this authority continued after the expiration of EPAA under the continuing jurisdiction provided for by Section 18, and that the District Court had the power to enforce the subpoenas which were based upon possible violations occurring when the applicable regulations were in effect.

This conclusion is consistent with the prior opinions of this Court which repeatedly have upheld the enforcement of subpoenas of the DOE and its predecessor agencies. Apache Oil Company, Inc. v. United States, 694 F.2d 714 (Em.App.1982); United States v. Juren, 687 F.2d 493 (Em.App.1982); United States v. Ted True, Inc., 687 F.2d 491 (Em.App.1982); United States v. LaJet, Inc., 685 F.2d 1378 (Em.App.1982); United States v. Lotus Petroleum, Inc., 678 F.2d 1082 (Em.App.1982); United States v. Andrus Energy Corporation, 678 F.2d 1081 (Em.App.1982) cert. denied, —— U.S. ——, 103 S.Ct. 71, 74 L.Ed.2d 70 (1982); and cases cited therein.

II.

■ Appellants next contend that the four subpoenas were issued for an unlawful purpose because the DOE, it is alleged, had already reviewed or been given access to the documents requested in the subpoenas. This contention, and the reliance by the appellants on United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), lack merit under the controlling opinion of

this Court in *United States v. Bell*, 564 F.2d 953 (Em.App.1977) cited with approval in *United States v. Ted True, Inc.*, 687 F.2d 491 (Em.App.1982). In *United States v. Bell*, 564 F.2d 953 at 958–961 (Em.App. 1977), Judge Estes distinguished the opinion in *United States v. Powell, supra,* concluding:

> Appellant contends that *Powell, supra,* an IRS subpoena enforcement case, should be applied to require the FEA [predecessor agency to the DOE] to show not only (1) that the investigation was conducted pursuant to a legitimate purpose and (2) that the inquiry was relevant to that purpose, but also (3) that the FEA does not already possess the information and (4) that the required administrative steps have been followed. To require these two additional elements of proof would restrict the broad and necessary powers of enforcement conferred on the FEA by Congress and the President under the Emergency Petroleum Allocation Act and Federal Energy Administration Act. There is a critical difference between the procedures necessary for obtaining essential facts for enforcing the Allocation Act and obtaining such facts for enforcing the Internal Revenue Code. Under the latter, annual statements (tax returns) are required to furnish the information. Indeed, application here of the very different Internal Revenue Code enforcement procedures would defeat the Congressional call for "prompt action by the Executive Branch of Government" in Section 2(a) of the Allocation Act in achieving a goal of the Act, i.e., "equitable distribution of crude oil . . . and petroleum products at equitable prices among all regions and areas of the United States and sectors of the petroleum industry . . . ." Section 4(b)(1)(F) of the Allocation Act.

> \*    \*    \*    \*    \*    \*

Since the government made its preliminary showing in support of the subpoena, the burden of proving abuse of the court's process rests on appellant. *United States v. Powell, supra; United States v. McCarthy,* [514 F.2d 368 (3d Cir.1975) ], *supra.* As regards appellant's point that pertinent records should have been examined on a previous trip to Bell Oil Company, the Supreme Court has held that the burden of establishing abuse of the court's process was not satisfied by showing "that the records in question have already been once examined." *United States v. Powell, supra,* 379 U.S. at 58, 85 S.Ct. at 255. There is no arbitrary limit to the number of trips which the FEA investigators may make to a given company. It is not for Bell to choose the records the FEA examines or to second-guess the FEA's decision with respect to whether it has obtained all information needed to meet its statutory mandate to determine compliance.

Applying the above quoted holding by this Court in the *Bell* case, *supra,* to the facts of this case, we conclude that the earlier access of the DOE to records during the on-site audit did not render the purpose of the subpoenas in question unlawful. While appellants did cooperate with the DOE auditors during the previous on-site audit, appellants have refused further access to their records, which if granted would have made this enforcement proceeding unnecessary.

We find that appellees have met their preliminary burden of proof in support of the subpoenas, and that appellants, as found by the District Court, have failed to establish an abuse of the subpoena power of the DOE. Under exceptional circumstances, not present in this case, abuse of process may exist. We find, however, as did the District Court, that the facts in this case do not support appellants' allegations of abuse, bad faith or unlawful harassment. *Cf. United States v. Bell,* 564 F.2d 953 at 961–962 (Em.App.1977); *United States v. Juren,* 687 F.2d 493 at 494 (Em.App.1982) holding that "allegations of bad faith and improper purpose must be buttressed with specific facts." In this case, as in *United States v. Empire Gas Corporation,* 547 F.2d 1147 at 1154 (Em.App.1976), *cert. denied,* 430 U.S. 915, 97 S.Ct. 1326, 51 L.Ed.2d 592 (1977), we

conclude that appellants did not show that the information sought by the administrative subpoenas was so "unnecessarily duplicative" that it constituted abuse, improper purpose or bad faith.

### III.

■ Appellants further contend that the subpoenas were unlawful because they were issued "to gather information for the sole purpose of criminal prosecution." In making this contention appellants apparently rely upon *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978).

We have held that the DOE has broad legal authority to issue subpoenas under the following statutes and regulations: Section 206 of the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 note, incorporated by Section 5(a)(1) of the EPAA, 15 U.S.C. § 754(a)(1), as amended; Section 13(e)(1) of the Federal Energy Administration Act of 1974, 15 U.S.C. § 772(e); Section 645 of the Department of Energy Organization Act, 42 U.S.C. § 7255; and 10 C.F.R. §§ 205.8 and 205.201. *United States v. Pasco Petroleum Co., Inc.,* 633 F.2d 956 at 959 (Em.App. 1980), *cert. denied,* 450 U.S. 995, 101 S.Ct. 1698, 68 L.Ed.2d 195 (1981); *United States v. Juren,* 687 F.2d 493 at 493–494 (Em.App. 1982).

There is nothing on the face of these statutes and regulations that draws a distinction between civil and criminal investigations by the DOE, or expressly prevents the DOE from issuing subpoenas in a criminal investigation.

Nevertheless, we note that the Supreme Court has held that in certain cases the issuance of a summons by the Internal Revenue Service (IRS) may be unlawful because the summons is related to a criminal investigation. *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978) and cases therein cited.[2] And this Court has recognized this issue by holding that the DOE "can have [its] subpoenas enforced by a District Court upon an initial showing that the information sought will advance a civil, as distinguished from a criminal, investigation." *United States v. Juren,* 687 F.2d 493 at 494 (Em.App.1982) citing *United States v. LaSalle National Bank, supra.*

In this case, at the hearing before the District Court, appellees met this initial burden by showing that the DOE had not made a determination to refer the case to the Department of Justice for criminal prosecution (Tr. 10, 34), and that the information sought by the subpoenas would be used in civil investigations (Declaration of Jane O'Neill, R. Exhibit 4 admitted as evidence at Tr. 6). Thereafter, the appellants did not meet their burden of disproving the actual existence of a valid civil purpose. *United States v. LaSalle National Bank, supra,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 at 235 (1978) which described this burden as heavy. Therefore, the District Court correctly concluded that the subpoenas were not issued for the sole purpose of gathering data for criminal prosecution.[3]

**2.** The majority opinion in *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978) discussed the origin of this issue and set forth two instances when an IRS summons is unlawful because the summons is related to a criminal investigation. First, the summons is illegal if it is issued after the IRS "recommends to the Department of Justice that a criminal prosecution, which reasonably would relate to the subject matter of the summons, be undertaken." *United States v. LaSalle National Bank, supra,* 437 U.S. at 311–313, 318, 98 S.Ct. at 2364–2365, 2368. Second, prior to the recommendation to the Department of Justice for criminal prosecution, the summons must be issued in good faith which requires that the summons meet the

good faith standards set forth in *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), and also requires that the summons not be issued solely for criminal investigative purposes as shown by the "institutional posture" of the IRS. *United States v. LaSalle National Bank, supra,* 437 U.S. at 313–318, 98 S.Ct. at 2365–2368. These limitations are separate from any constitutional limitations upon the issuance of a summons during a criminal investigation.

**3.** Appellees argue that the limitations set forth in *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978) may not apply to the subpoena authority of the DOE. We note that it is not clear if these

*United States v. Juren,* 687 F.2d 493 (Em. App.1982); 3 Mezines, Stein, Gruff, *Administrative Law* § 21.01[2].

Appellants argue that the issuance of the NOPV demonstrated that the civil investigation by the DOE was completed before the issuance of the subpoenas. We conclude, however, that the issuance of the NOPV did not require a conclusion that the civil investigation by the DOE was complete and that the subpoenas were therefore issued solely for a criminal investigation. The NOPV expressly stated that it did "not in any way limit any civil or criminal liability that may arise pursuant to the regulations of the [DOE] or other applicable provisions of law" and that the issuance of the NOPV was not "a limitation on continuing investigations of transactions involved in [the NOPV] or other relevant matters." And we find nothing in the statutes or regulations that requires the DOE to end its investigation for civil purposes when it issues a NOPV.

The recent opinion entitled *The United States of America, et al. v. Armada Petroleum Corporation, et al.,* 700 F.2d 706 (Em. App.1983), is not in point on this appeal because of the absence in this case of the following facts, present in the *Armada Petroleum Corporation* case: (1) two criminal indictments; (2) reference of additional transactions to the Department of Justice by the Office of Special Investigations (OSI) of the DOE; (3) an order of the district court staying the enforcement of a subpoena *duces tecum* until completion of the criminal proceedings; and (4) exercise of discretion of the district court in staying the enforcement proceedings.

We also conclude that the reliance by appellants upon 10 C.F.R. § 205.198 is without merit. 10 C.F.R. § 205.198(a) provides in part:

> If a person intends to file a Motion for Discovery, he must file it at the same time that he files his Statement of Objections or at the same time he files his Response to a Statement of Objections, whichever is earlier.

Appellants apparently argue that after a civil administrative enforcement proceeding is commenced the DOE is bound under 10 C.F.R. § 205.198 to secure further information only by discovery. This administrative regulation does not require an administrative motion for discovery to be filed when the NOPV is issued, but requires such a motion for discovery, if any, to be filed later with the Statement of Objections or responses thereto.[4] Thus, when a NOPV is issued by the DOE, the DOE is not required by 10 C.F.R. § 205.198 to seek information only through discovery.

Further, we note that the procedures concerning an administrative enforcement proceeding, including the issuance of a NOPV and the filing of a Motion for Discovery, do not limit the authority of the DOE to initiate judicial civil enforcement actions in coordination with the Department of Justice. 10 C.F.R. § 205.190. Consequently, the

---

limitations apply to agencies other than the IRS. For example, compare *Interstate Commerce Commission v. Gould,* 629 F.2d 847, at 855–856 (C.A. 3 1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981), concluding that the limitations apply to the Interstate Commerce Commission, with *Securities and Exchange Commission v. Dresser Industries, Inc.,* 628 F.2d 1368 at 1377–1384 (C.A. D.C.1980), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980) concluding that the limitations do not apply to the Securities and Exchange Commission. And in light of the broad power of the DOE to issue subpoenas the limitations may not fully apply to DOE subpoenas. However, in this decision we do not determine the extent to which a DOE subpoena is unlawful because of its relationship to a criminal investigation. We only conclude that under

the standards of the *LaSalle National Bank* opinion, *supra,* as recognized by *United States v. Juren,* 687 F.2d 493 (Em.App.1982) the subpoenas in question were lawfully issued.

**4.** The Statement of Objections sets forth objections to the issuance by the Economic Regulatory Administration (ERA) of a Proposed Remedial Order. 10 C.F.R. § 205.196. The Proposed Remedial Order may be issued by the ERA (1) if the ERA finds, after the period authorized for reply to a NOPV, that a violation has occurred, is continuing or is about to occur; or (2) at any time the ERA finds that a violation has occurred, is continuing or is about to occur, even if the ERA has not previously issued a NOPV. 10 C.F.R. § 205.192.

**1248**

commencement of an administrative enforcement proceeding does not necessarily demonstrate that civil investigations by the DOE are complete.

This decision does not deny to Thriftyman, or any other party obligated to respond to the subpoenas, any constitutional privilege against self incrimination or constitutional right to due process. In determining the validity of the issuance by DOE of the administrative subpoenas in question we have not considered these constitutional limitations upon the subpoena authority of the DOE. Only the scope of the statutory powers of DOE to issue administrative subpoenas is determined by this Court under principles of statutory interpretation, developed in *United States v. LaSalle National Bank, supra,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), *United States v. Juren,* 687 F.2d 493 (Em.App.1982), and cases therein cited.

■ Administrative subpoenas *duces tecum* may be issued to parties who may ultimately be exposed to possible criminal prosecution, and to parties who are not subject to the relevant criminal statutes and regulations. Only the parties who have a constitutional privilege against compliance with the compulsory administrative processes because of self incrimination may assert the privilege at an appropriate time and in an appropriate manner in the administrative process, at which time it must be respected. See for examples, *Missouri Terminal Oil Company v. Edwards,* 659 F.2d 139 at 144–146 (Em.App.1981); *Hawthorne Oil & Gas Corporation v. Department of Energy,* 647 F.2d 1107 at 1113 (Em.App. 1981); 1 Antieau, *Modern Constitutional Law,* §§ 2:25, 2:26 and 2:29; 3 Mezines, Stein, Gruff, *Administrative Law,* § 20.-04[2][b] in which the rules are stated in part as follows:

> [b]-*Fifth Amendment.* The courts, in determining the validity of a claim that compliance with an administrative subpoena would violate Fifth Amendment rights against self incrimination, have narrowly limited the use of this constitutional provision. The protection applies

only to individuals and may not be claimed by any entity other than an individual. Nor may an officer or employee of a corporation refuse to produce corporate records on the ground that the record will incriminate the officer or employee. It has also been held that the existence of a *de facto* corporation cannot be denied for the purpose of invoking the Fifth Amendment privilege.

Since the privilege against self incrimination is a personal one, it may not be asserted on behalf of another party. With respect to subpoenaed documents, an individual may not claim the Fifth Amendment right if he has given possession of the documents to another.

Although the Fifth Amendment bars the government from compelling self-incriminating testimony from an individual, the Supreme Court has held that the government is not barred from obtaining evidence from a third party which would incriminate that individual. The privilege against self incrimination does not apply once the owner of documents has given up possession to another, unless it is clear that the owner's "relinquishment of possession is so temporary and insignificant as to leave the personal compulsion upon the [owner] substantially intact."

Even documents retained by the individual may be required to be produced. Before the privilege can be applied, three criteria must be met:

> (1) The individual must be under compulsion to produce the documents,
> (2) The documents must be testimonial in nature, and
> (3) The documents must tend to incriminate the individual.

The fact that documents are compelled and incriminating is insufficient reason to uphold the privilege if they are not also testimonial communications. These tests are applicable whether the documents were created by a third party or by the individual. However, situations may arise in which the act of producing subpoenaed documents is in itself as incrimi-

nating as the testimonial communication. Without giving examples of such circumstances, the Supreme Court has stated that resolution of this problem would depend on the facts of each case. (Footnotes omitted.)

Under these rules, at an appropriate time an appropriate individual may assert in the administrative process, and in judicial proceedings to enforce subpoenas, the constitutional privilege against self incrimination. But no appropriate individual has asserted such a constitutional privilege at an appropriate time in this case.

## IV.

■ The final issue on appeal is the contention of appellants that their Motion for Discovery, filed June 2, 1982, should have been granted.

Appellants correctly note that under Rule 81(a)(3) of the Federal Rules of Civil Procedure (F.R.Civ.P.), the F.R.Civ.P. are applicable in a subpoena enforcement proceeding. F.R.Civ.P. 81(a)(3) expressly provides, however, that the rules apply "except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings." Thus, a district court in the exercise of its discretion can grant or deny discovery in a subpoena enforcement proceeding. *United States v. Morgan Guaranty Trust Company,* 572 F.2d 36 at 42–43 footnote 9 (C.A.2 1978), *cert. denied,* 439 U.S. 822, 99 S.Ct. 89, 58 L.Ed.2d 114, *rehearing denied,* 439 U.S. 997, 99 S.Ct. 599, 58 L.Ed.2d 671 (1978).

■ The district courts "must be cautious in granting such discovery rights, lest they transform subpoena enforcement proceedings into exhaustive inquisitions into the practices of the regulatory agencies." *Securities and Exchange Commission v. Dresser Industries, Inc.,* 628 F.2d 1368 at 1388 (C.A.D.C.1980), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). A substantial preliminary showing of abuse, bad faith or illegal purpose in the issuance of the subpoenas is required before even limited discovery need be ordered. *United States v. Juren,* 687 F.2d 493 at 494 (Em. App.1982); *United States v. Morgan Guaranty Trust Company, supra,* 572 F.2d 36 at 42–43 footnote 9 (C.A.2 1978).

■ We find that appellants failed "to meet the heavy burden of showing the extreme circumstances that would justify" discovery. *United States v. Juren,* 687 F.2d 493 at 494 (Em.App.1982). Therefore, we conclude that the Order denying the Motion for Discovery was not an abuse of judicial discretion.

## CONCLUSION

For the foregoing reasons, we affirm the Order of the District Court.