**UNITED STATES of America and Robert Gerring, Petitioners-Appellees,**

v.

**James E. FERRELL, Ferrellgas and Propane Industrial, Inc., Respondents-Appellants.**

No. 8–15.

Temporary Emergency Court of Appeals.

Argued May 10, 1983.

Decided Sept. 1, 1983.

David R. Schlee, Smith, Gill, Fisher & Butts, Incorporated, Kansas City, Mo., was on the brief for respondents-appellants.

E. Eugene Harrison, Asst. U.S. Atty., Dept. of Justice, Kansas City, Mo., with whom Robert G. Ulrich, U.S. Atty., H. Jonathan Pratt, Office of Sp. Counsel, Dept. of Energy, Kansas City, Mo., and Charles Cope, Office of Litigation, Dept. of Energy, Washington, D.C., were on the brief for petitioners-appellees.

Before BECKER, BROWN and DAUGHERTY, Judges.

DAUGHERTY, Judge.

Petitioners-Appellees, United States of America (Department of Energy), and Robert Gerring, (DOE) issued a subpoena to Respondents-Appellants, James E. Ferrell, Ferrellgas and Propane Industrial, Inc., (Ferrell).[1] Ferrell refused to honor the same. DOE requested the United States District Court for the Western District of Missouri to enforce the subpoena. The District Court enforced the subpoena by its Order. Ferrell, seeking review of said Order by this Court, requests that said Order be reversed and vacated and the subpoena quashed.[2] DOE requests on this appeal that said Order be affirmed and the subpoena thereby enforced.

The only issue before this Court is whether the subpoena was issued by DOE for an improper purpose.[3] DOE claims it was issued in aid of the completion of a pricing audit of Propane Industrial, Inc. (PII). Ferrell asserts it was issued to investigate the alleged or potential wrongdoing of a former employee of DOE, one Wayne Sellers (Sellers).[4]

The evidence of record reveals that Sellers, as an auditor in the employ of DOE, conducted a pricing audit of PII. This audit was made on the basis of a pooled inventory of propane gas between PII (selling to commercial and industrial accounts) and Ferrellgas (selling to retail customers). His audit indicated an overcharge by PII of approximately $360,000. After reviewing this audit, DOE made the decision not to issue thereon a Notice of Probable Violation (NOPV) but that the audit should be continued with instructions that, if possible, PII be audited separately from Ferrellgas. The official issuing the subpoena testified that the Sellers audit was not complete. As Sellers had left the employ of DOE, the audit continuation on a separate inventory basis if possible (as to PII) was assigned to Barbara Shamblin (Shamblin), another DOE auditor.

Initially, Shamblin was allowed access to records by Appellants Ferrell. During this audit Shamblin observed Sellers on the premises of Respondents-Appellants. Suspecting that Sellers was then in the employ of Respondents-Appellants and such would amount to a conflict of interest in violation of Federal law,[5] Shamblin reported the incident to her superiors. Regional counsel for DOE then advised Sellers by letter that if he was employed by Respondents-Appellants in any capacity it would be a conflict

---

1. The subpoena was issued pursuant to the authority of 12 U.S.C. § 1904; 15 U.S.C. §§ 754(a)(1), 772(e); 42 U.S.C. § 7255 (Supp. IV 1980).

2. Review jurisdiction of this Court is present pursuant to 15 U.S.C. §§ 751 *et seq.*, 761 *et seq.*, 791 *et seq.* and 12 U.S.C. § 1904.

3. Ferrell does not otherwise challenge the subpoena. They do not question the authority of DOE to issue a valid subpoena on Propane Industrial, Inc. and do not question that the information sought by the subpoena involved herein is relevant if the same was issued for a proper and lawful inquiry. See *United States v. Bell,* 564 F.2d 953 (Em.App.1977).

4. It is not disputed that the issuance of this subpoena would be improper if issued for the *sole* purpose of investigating the alleged or potential wrongdoing of a DOE employee.

5. Under the circumstances of this case, it appears that if Sellers was then in the employ of Respondents-Appellants it would be a conflict of interest in violation of Federal law. 18 U.S.C. § 207(a) and (b); 10 C.F.R. 1010.-303(a)(1).

of interest which he would be compelled to bring to the attention of appropriate officials of the Federal Energy Administration.[6]

Though Shamblin had concluded at one point that a separate inventory audit of PII could be accomplished within a tolerable degree of accuracy—probably 80 to 85 percent, it was the final opinion or decision of DOE that a separate inventory audit was not satisfactory and that the audit should be completed on a pooled inventory basis by additional auditing work. At this time Respondents-Appellants resisted further examination of its records by DOE. The subpoena involved in this litigation was subsequently issued.

The task of the District Court, in its judgment, was to determine from the evidence before it whether the subpoena involved was issued in aid of an audit continuation of PII or to investigate Sellers. The District Court found and concluded that said subpoena was not issued to investigate Sellers, but was issued in aid of the audit of PII.

**6.** In Department of Energy Regulation, 10 C.F.R. 1010.104(h), the Inspector General is required to investigate alleged violations of the DOE regulations in these words:

(h) The Inspector General shall investigate alleged violations of these regulations.

In the same regulation 1010.104 by paragraphs (a)(4) and (5) employees are required to recognize that violations of the regulations may subject them to administrative discipline and to discuss with the reviewing officials and Counselor, as appropriate, any problems arising out of the DOE regulations. The reviewing officials are required by the paragraph (b)(6) of the same regulation to report to the Counselor and the Inspector General all alleged or actual misconduct of DOE employees, and in consultation with the Counselor to take action as a result of any investigation, and to report to the Counselor any action taken. So DOE employees, reviewing officials and the counselors have an obligation to take notice of problems and misconduct and to report them.

**7.** Respondents-Appellants urge that a different approach is applicable herein as the District Court heard no live testimony but decided the case on depositions and other documentary evidence. Under this approach this Court would interpret the evidence independently. *See* the following decisions of the United States Court of Appeals for the Eighth Circuit: *Johnson v.*

■ Normally, our task in review is to determine if a decision of the District Court is clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure.[7] A finding of fact is clearly erroneous only when although there is evidence to support it, the reviewing Court on the entire evidence is left with the definite and firm conviction that a mistake has been made. *United States v. United States Gypsum Co.,* 333 U.S. 364 at 395, 68 S.Ct. 525 at 542, 92 L.Ed. 746 (1948).

In reaching its decision, the District Court determined that the investigation of Sellers was concluded as far as the auditors were concerned with the above-mentioned letter to him by regional counsel for DOE and that the evidence sought as shown by the face of the subpoena would be irrelevant to an investigation of Sellers. Respondents-Appellants challenge these determinations as being erroneous. These determinations of the District Court were made by its interpretation or understanding of the contents of said letter itself, probably aided by pertinent regulations to the effect that

*Mabry,* 602 F.2d 167, 170 (Eighth Cir.1979); *Gay Lib v. University of Missouri,* 558 F.2d 848, 853, n. 10 (Eighth Cir.1977); *Frito Lay v. So Good Potato Chip Co.,* 540 F.2d 927, 930 (Eighth Cir.1976). Not all circuits are in agreement on this point. *See* 9 Wright and Miller, *Federal Practice and Procedure,* § 2587 (1971), n. 25; n. 33.

Despite some contrary decisions of some Courts of Appeals, the Supreme Court of the United States has consistently held that the clearly erroneous test is applicable to "inferences drawn from documents and undisputed facts." *United States v. United States Gypsum Co.,* 333 U.S. 364 at 394, 68 S.Ct. 525 at 541, 92 L.Ed. 746 at 765 (1948). This rule has been restated and affirmed by the Supreme Court of the United States in *Commissioner of Internal Revenue v. Duberstein,* 363 U.S. 278 at 291, 80 S.Ct. 1190 at 1200, 4 L.Ed.2d 1218 at 1228 (1960); *United States v. Singer Manufacturing Co.,* 374 U.S. 174 at 194–195, 83 S.Ct. 1773 at 1784, 10 L.Ed.2d 823 at 838 note 9 (1963). *See also* 9 Wright and Miller, *Federal Practice and Procedure* § 2587, 740 at 746–747 (1971). 5A *Moore's Federal Practice,* ¶ 52.03[1] 2613 at 2615–2618 (1982). This Court follows the rule as stated by the Supreme Court of the United States in the cases cited above.

DOE auditors are not the proper officials to investigate any wrongdoing of their colleagues with the reasonable conclusion reached therefrom that regional counsel advised Sellers that if he was in fact employed by Ferrell he would be compelled to report the matter to the Federal Energy Administration for its action by appropriate officials. And, as to the subpoena that on its face sought information as to the quantity, cost and selling price of propane and did not seek the type of information which would be relevant to an investigation of a conflict of interest by Sellers, such as payroll records of Respondents-Appellants and any employment contract(s) between Respondents-Appellants and Sellers or similar documents of Ferrell to ascertain if in fact Sellers became an employee of Respondents-Appellants after he left his employment by DOE.

Respondents-Appellants rely heavily on their interpretation of the deposition testimony of Robert Gerring, District Manager of DOE, as to why he issued the subpoena. This testimony is:

Q   As you sit here today do you know of any reasons that are not expressed in that subpoena, Exhibit 167?

MR. HARRISON: As to why the subpoena should be enforced?

MR. SCHLEE: Right. Again, if you need time to look it over and make sure of your answer, take as much time as you need.

THE WITNESS: I had one other reason why I felt it should be enforced.

BY MR. SCHLEE:

Q   What is that?

A   There was a potential impropriety of one of the former employees that worked for me on this, and I felt that the only way to assure that no impropriety occurred was to get a good, independent audit.

\*        \*        \*        \*        \*        \*

Q   Okay.   In this third sentence of paragraph ten there are two reasons stated [for issuing the subpoena involved herein].   One is that the two companies could not be audited separately, and two,

the files of the prior auditor who had since left the agency were unverifiable. By No. 2 as I've just recited it, you mean that—at the outset of your deposition you stated two reasons why the subpoena should be issued: One, the audit is not complete—

A   That was my primary reason.   I want that clear for the record.   That was my very primary reason.

Q   Okay.   Do these two reasons that are stated in paragraph ten, in the third sentence, comport with the two reasons you've earlier testified to, the primary reason and the secondary reason?

\*        \*        \*        \*        \*        \*

THE WITNESS: Yes.   As far as I was concerned, I was afraid to—I wanted to make certain that the audit work done there was accurate and clearly reflected what went on before relying on it.

\*        \*        \*        \*        \*        \*

Q   So the second reason in the third sentence of paragraph ten refers to the suspicion that you had about Mr. Sellers when you found out about his potential conflict of interest?

A   Yes, there were discussions.   I recall very, very vaguely discussions where Barbara Shamblin was present and explained some of the problems with the firm.   Most of them had to do with the condition of the records that had to be reviewed.   I cannot recall the details of those meetings.

Q   Okay.   In general terms, did all those reasons add up to what you stated here in the third sentence of paragraph ten of your affidavit, specifically—

A   No.

Q   Okay.

A   All those reasons added up to my conclusion in paragraph five.

Q   What was it about the condition of the records that Mrs. Shamblin told you was a problem?

A   My biggest concern—my biggest concern about the condition of the records was the independence that Mr. Sellers

exercised on his part. That was—again, that was my biggest concern.

Q In other words, the potential conflict of interest?

A Right.

Q So basically—correct me if I'm wrong—what was involved here is you wanted somebody to go back and check Sellers' work and make sure it was right?

A No. No. Again, as I've said before, I simply wanted the audit of the firm completed. We realized that we'd left out one of the major segments of the firm. One of those two had never been audited. It had to be done in order for us to give that letter or to continue on with the administrative procedure.

\* \* \* \* \* \*

Q Any other reasons other than what you've already expressed that you would add to this affidavit to make it complete now?

A My primary reason was that I wanted the audit completed, as well as many others that were open at the time that I got to Kansas City. That was one. That was my primary reason. I did become concerned later on down the line when I was advised that this employee had represented the firm at a meeting with our people, and that gave me double concern or more concern about trying to do an independent audit to assure that the work papers—that the company was or was not in compliance with the price regulations.

Q I guess my question was were there any other reasons than those two ones that you've expressed, and I guess your answer is no, none other than those two? Is that fair?

A Right.

■ It is noted from the evidence that when Shamblin was directed to continue or complete the PII audit, the Sellers incident (Shamblin seeing Sellers at the premises of Respondents-Appellants) had not occurred. Hence, when the additional audit work by Shamblin was ordered, a potential conflict of interest by Sellers was not within the knowledge of anyone at DOE according to the evidence. However, the subpoena was issued by Gerring after the audit continuation or completion was directed and was under way and after he had knowledge of a potential conflict of interest by Sellers.

It is not believed that Respondents-Appellants should dictate or determine how DOE should perform its auditing functions or the auditing standards to be followed or decide when an audit undertaken is completed or when an audit may be reopened or continued.[8] It appears that Gerring was concerned at the time the subpoena was issued that Sellers, one of his former auditors, may have violated the law by accepting employment by the Respondents-Appellants after leaving DOE. In the circumstances then present, it is natural that Gerring wanted to be sure that Sellers' previous work on the PII audit was done in proper fashion. But this has nothing to do with whether after his leaving employment with DOE Sellers accepted employment with the Respondents-Appellants thereby creating a conflict of interest and thereby and only thereby violating the law. With the conflict of interest matter coming into view during an audit (by Shamblin) and giving Gerring some concern, this should not per se prohibit DOE from pursuing the audit previously undertaken to a conclusion under the auditing standards of DOE. To hold otherwise, would allow a proper audit which was under way to be completely sidetracked by a conflicts of interest event. Respondents-Appellants' further argument about the Rowland (DOE) audit of Ferrellgas is without merit, as it was made separately of Ferrellgas and has no bearing on the issue before the District Court, namely,

---

**8.** *See United States v. Bell,* 564 F.2d 953 at 960 and 961 (Em.App.1977):

There is no arbitrary limit to the number of trips which the FEA investigators may make to a given company. It is not for Bell to choose the records the FEA examines or to second-guess the FEA's decision with respect to whether it has obtained all information needed to meet its statutory mandate to determine compliance.

propriety of the subpoena issued for the records of PII.

 Furthermore, this Court has consistently and repeatedly upheld enforcement of the subpoenas of the DOE and its predecessor agencies, in the absence of exceptional circumstances not present in this appeal. *Apache Oil Company, Inc. v. United States,* 694 F.2d 714 (Em.App.1982); *United States v. Juren,* 687 F.2d 493 (Em.App.1982); *United States v. Ted True, Inc.,* 687 F.2d 491 (Em.App.1982); *United States v. LaJet, Inc.,* 685 F.2d 1378 (Em.App.1982); *United States v. Lotus Petroleum, Inc.,* 678 F.2d 1082 (Em.App.1982); *United States v. Andrus Energy Corporation,* 678 F.2d 1081 (Em.App.1982); *United States v. Thriftyman, Inc.,* 704 F.2d 1240 (Em.App.1983) and cases therein cited. The right of DOE to enforcement of its subpoenas of relevant information, issued for a lawful purpose, is not affected because the DOE has had earlier access to the same records, unless the inquiry is unnecessarily duplicative, which is not the case here. *United States v. Bell, supra,* 564 F.2d 953 at 958–961; *United States v. Thriftyman, Inc., supra,* 704 F.2d 1240 at 1245, (Em.App.1983). Nor is the right to enforcement affected by the fact that the fruits of the lawful civil investigation may also secondarily or incidentally ultimately serve a possible but presently uninitiated criminal prosecution. *United States v. Juren, supra,* 687 F.2d 493 at 494. For the same reason the right to enforcement of a subpoena for lawful primary civil purposes would not be affected by a secondary "concern" or purpose to use the records as evidence of a possible conflict of interest of a prior examiner of DOE. As declared in *United States v. Thriftyman, Inc., supra,* 704 F.2d 1240 at 1246–47 (Em.App.1983), it is enough that the subpoenas were not issued for the *sole* improper purpose of gathering data for a criminal prosecution. *See also* 3 Mezines, Stein, Gruff, *Administrative Law,* § 21.01[2] note 17. Nor would the prior or imminent issuance of a Notice of Probable Violation render the subpoena invalid. *United States v. Thriftyman, Inc., supra,* at 1247.

 So, in issuing a civil subpoena a secondary purpose of DOE to ascertain possible criminal liability of the regulated party was not an improper purpose. For the same reason a secondary purpose to ascertain whether evidence exists that a prior employee, earlier examining the records, was guilty of misconduct reportable to the Counselor and Inspector General of DOE pursuant to 10 C.F.R. 1010.104(h)(6), is not improper.

It is our conclusion that under either the proper clearly erroneous test or the approach urged by Respondents-Appellants, the findings of the District Court are correct and should be upheld as not being clearly erroneous or properly found from the evidence as the case may be. *See Eastern Airlines, Inc. v. Atlantic Richfield Company,* 712 F.2d 1402 (Em.App.1983). The Court is satisfied from our independent interpretation of the evidence that the subpoena was issued in aid of the continuation of a proper audit of PII and not to investigate Sellers.[9]

AFFIRMED.

**9.** This Court has not seen fit to rule on the Motion to Affirm filed herein by Petitioners-Appellees and responded to by Respondents-Appellants. The same is treated as being merged herein.